UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GREENBERG TRAURIG, LLP,    No. 2:07-cv-01572-MCE-DAD

    Plaintiff,

  v.    MEMORANDUM AND ORDER

GALE CORP.,

    Defendant.

----oo0oo----

Defendant/Counter-claimant Gale Corp. ("Gale") has brought the present counterclaim against Plaintiff/Counterdefendant Greenberg Traurig, LLP ("Greenberg") and Third-Party Defendants Kathleen Finnerty ("Finnerty") and Livingston & Mattesich Law Corporation ("Livingston & Mattesich") for legal malpractice. Counter-claimant Gale now moves for summary adjudication regarding several alleged breaches of duty by Greenberg. For the reasons set forth below, Gale's motion for summary adjudication will be denied.[1]

///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

1

**BACKGROUND**

On July 30, 2003, Gale entered into a Retainer Agreement with Livingston & Mattesich for legal representation in the patent infringement suit <u>Kapusta v. Gale Corporation</u>, United States District Court, Eastern District of California, No. Civ. S-03-1232 LKK/KJM ("Kapusta patent litigation"). Seven days later, Kathleen Finnerty became the lead counsel for Gale and took responsibility for handling its defense. Effective October 10, 2005, Livingston & Mattesich's attorneys joined Greenberg Traurig,[2] and Greenberg took over Gale's case under the same terms and conditions as set forth in the July 2003 Retainer Agreement. Third-party Defendant Finnerty remained Gale's lead attorney after joining Greenberg.

Following a Markman hearing,[3] on August 5, 2004, the Court issued an order that construed the term "hand-grip size case" in the Kapusta patent to be inapplicable to a "pen size device" such as Gale's challenged product.

///
///
///

---

[2] The parties dispute whether the two firms merged. Greenberg asserts that "individual attorneys with Livingston & Mattesich" simply "left that firm and joined Greenberg Traurig." (Pl.'s Separate Statement of Undisputed Material Facts, ¶3). By contrast, Gale maintains that the firms merged, "so that Livingston & Mattesich became the Sacramento office of Greenberg Traurig." (Def.'s Resp. to Separate Statement, ¶3).

[3] A "Markman hearing," or claim construction hearing, is a procedure whereby a district court construes the meaning of one or more patent claims prior to trial.

2

On October 28, 2004, as a result of the Court's claim construction, Ms. Finnerty entered into a stipulation on behalf of Defendant Gale, in which she agreed that Gale's product met each claim element under the patent except for the "hand grip case." Judgment of non-infringement was entered pursuant to that stipulation on November 2, 2004. Kapusta appealed the judgment to the Court of Appeals for the Federal Circuit. On appeal, the Federal Circuit overturned the district court's claim construction, and held that the term "hand-grip size case" applies to a case of any size "that can be gripped in a normal hand." The Federal Circuit remanded the case for further proceedings consistent with its claim construction.

On October 13, 2006, bound by the Federal Circuit's claim construction and the parties' stipulation, this Court granted summary judgment against Gale for patent infringement. In granting summary judgment, the Court refused to grant Gale's request, under Rule 60(b), for release from its binding stipulation. Judge Karlton explained in his order that Rule 60(b) only provides a court with one year during which it may relieve a party from a final judgment. After the grant of summary judgment as to infringement, the parties settled their remaining claims.

On August 2, 2007, Greenberg filed a complaint against Gale to recover unpaid legal fees arising from its representation of Gale in the Kapusta litigation. In response, Gale filed the present counterclaim and third-party claim for legal malpractice.

///
///

3

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

4

1    If the moving party meets its initial responsibility, the
2 burden then shifts to the opposing party to establish that a
3 genuine issue as to any material fact actually does exist.
4 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
5 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.
6 253, 288-89 (1968).
7    In attempting to establish the existence of this factual
8 dispute, the opposing party must tender evidence of specific
9 facts in the form of affidavits, and/or admissible discovery
10 material, in support of its contention that the dispute exists.
11 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
12 the fact in contention is material, i.e., a fact that might
13 affect the outcome of the suit under the governing law, and that
14 the dispute is genuine, i.e., the evidence is such that a
15 reasonable jury could return a verdict for the nonmoving party.
16 <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 251-52
17 (1986); <u>Owens v. Local No. 169, Assoc. of Western Pulp and Paper</u>
18 <u>Workers</u>, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
19 "before the evidence is left to the jury, there is a preliminary
20 question for the judge, not whether there is literally no
21 evidence, but whether there is any upon which a jury could
22 properly proceed to find a verdict for the party producing it,
23 upon whom the onus of proof is imposed." <u>Anderson</u>, 477 U.S. at
24 251 (quoting <u>Improvement Co. v. Munson</u>, 14 Wall. 442, 448,
25 20 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen
26 the moving party has carried its burden under Rule 56(c), its
27 opponent must do more than simply show that there is some
28 metaphysical doubt as to the material facts ....

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

The elements of a claim for professional negligence "are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." Coscia v. McKenna & Cuneo, 25 Cal. 4th 1194, 1199 (2001) (citations omitted). Gale's present motion seeks summary adjudication only with respect to the first two elements of the cause of action, duty and breach. Specifically, Gale argues that Livingston & Mattesich breached five duties it owed to Gale.

///

Gale has stipulated that it "will leave for trial its arguments and evidence regarding the causation and damages elements of its professional negligence claim." (P. & A. in support of Mot. for Summ. Adjudication at 2:4-5). It has also specified that it will leave for trial its allegation that Greenberg breached its duty to inform Gale of Livingston & Mattesich's alleged negligence. Finally, Gale has argued that Greenberg is liable as a successor entity for Finnerty's and Livingston & Mattesich's alleged malpractice.

Finnerty, Livingston & Mattesich and Greenberg offer two general arguments in opposition to Gale's motion. First, they argue that it is procedurally improper to use summary adjudication to seek judgment with respect to only some of the elements in a cause of action. Second, they argue that numerous triable issues of fact remain with respect to each specific factual allegation for which Gale seeks summary adjudication. Because this Court agrees with Finnerty, Livingston & Mattesich and Greenberg that a number of outstanding factual disputes fundamentally preclude summary adjudication, it is not necessary at this time to decide whether Gale's use of summary adjudication is also procedurally infirm, and the Court accordingly declines to do so.[4]

///
///

---

[4] This Court notes that the law is much less clear than Finnerty, Livingston & Mattesich and Greenberg would have it. Their argument that a court may not decide the duty and breach elements of a negligence cause of action relies exclusively on dicta from a footnote in Vaxiion Therapeutics, Inc. v. Foley & Lardner, LLP, 593 F. Supp. 2d 1153, 1164 n.8 (S.D. Cal. 2008).

7

1. **Legal Standards for Duty and Breach**
   a. **Duty of Care**

An attorney has a general duty "to represent his client with 'such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.'" <u>Lipscomb v. Krause</u>, 87 Cal. App. 3d 970, 975 (1978)(quoting <u>Ishmael v. Millington</u>, 241 Cal. App. 2d 520, 523 (1966). Furthermore, "a lawyer holding himself out to the public and the profession as specializing in an area of the law must exercise the skill, prudence, and diligence exercised by other specialists of ordinary skill and capacity specializing in the same field." <u>Wright v. Williams</u>, 47 Cal. App. 3d 802, 810 (1975).

Although Gale is correct that the "existence of the attorney's duty of care is generally a question of law," (P. & A. in support of Mot. for Summ. Adjudication at 4:18)(emphasis omitted) (citing <u>Osornio v. Weingarten</u>, 124 Cal. App. 4th 304, 319-20 (2004)), the specific standard of care in each particular situation is a question of fact, which the fact finder must decide on the basis of expert testimony. Accepting the premise that "attorney malpractice is to be determined by the rules that apply to professional negligence generally," <u>Lipscomb</u>, 87 Cal. App. 3d at 975, it becomes apparent that "[t]he question [of standard of care] remains one of fact, to be decided on the basis of expert testimony." <u>Landeros v. Flood</u>, 17 Cal. 3d 399, 410 (1976).

///

The only exception to the expert testimony requirement is where "'the conduct required by the particular circumstances is within the common knowledge of the layman.'" Id. (quoting Sinz v. Owens, 33 Cal. 2d 749, 753 (1949). It is therefore axiomatic that summary adjudication is inappropriate where both parties have submitted conflicting expert testimony concerning the attorney's standard of care. See Hutchinson v. United States, 838 F.2d 392 (9th Cir. 1988). This rule would seem to apply with special force to the standard of care for patent litigators, given Gale's admission that "'patent litigation is a complex and specialized field, [so that] an attorney who is not a specialist ... or is not familiar with patent law practice ... will need the assistance of a specialist.'" (P. & A. in support of Mot. for Summ. Adjudication at 5:24-25)(quoting Beck Report at p.4).

Accordingly, to the extent that the parties have submitted conflicting expert testimony regarding specific duties allegedly owed to Gale, this Court cannot decide, as a matter of law, whether these alleged duties exist.

**b.  Breach of Duty of Care**

Gale freely concedes that "[b]reach is typically a question of fact." (P. & A. in support of Mot. for Summ. Adjudication at 4:24)(citing Osornio v. Weingarten, 124 Cal. App. 4th 304, 319-20 (2004)).

///

///

1 Thus, in order to prevail on its motion for summary
2 adjudication, Gale must carry the heavy of burden of proving
3 that no reasonable jury could find that Livingston & Mattesich
4 was non-negligent in handling Gale's defense in the Kapusta
5 litigation.  See Anderson, 477 U.S. at 248 ("summary judgment
6 will not lie if ... the evidence is such that a reasonable jury
7 could return a verdict for the nonmoving party.")

8 　　　As with duty, in a professional negligence action the
9 existence of breach must be decided on the basis of expert
10 testimony.  See Vaxiion Therapeutics, Inc. v. Foley & Lardner,
11 LLP, 593 F. Supp. 2d 1153, 1165 (S.D. Cal. 2008)("In a legal
12 malpractice action, expert testimony is required to establish
13 the prevailing standard of skill and learning in the locality
14 *and the propriety of particular conduct* by the practitioner in
15 particular circumstances, as such standard and skill is not a
16 matter of general knowledge.")(emphasis added).  Again, the only
17 exception is that "[w]here the failure of attorney performance
18 is so clear that a trier of fact may find professional
19 negligence unassisted by expert testimony, then expert testimony
20 is not required."  Wilkinson v. Rives, 116 Cal. App. 3d 641,
21 647-48 (1981).

22 　　　As discussed below, because Livingston & Mattesich,
23 Finnerty and Greenberg have submitted expert testimony to rebut
24 each of Gale's five alleged breaches of duty, Gale's motion for
25 summary adjudication will be denied.
26 ///
27 ///
28 ///

10

**2. Gale's Alleged Breaches Against Livingston & Mattesich**

  **a. Failure to Associate with Competent Patent Counsel**

Gale argues that Livingston & Mattesich owed Gale the duty of "associat[ing] with competent patent litigation counsel." (P. & A. in support of Mot. for Summ. Adjudication at 8:3). This contention, however, improperly presupposes that Livingston & Mattesich was not itself competent patent litigation counsel. Although Gale does in fact argue that the Livingston & Mattesich attorneys lacked the requisite experience to defend against a suit for patent infringement, this conclusion rests on contested evidence. According to Livingston & Mattesich's expert, Alison Tucher, both Finnerty and Livingston & Mattesich counsel Scott Plamondon were competent patent litigators. (Tucher Report at 6:6-23). Because Livingston & Mattesich has submitted expert testimony that it was competent to handle Gale's case, this Court cannot rule, on summary adjudication, that Livingston & Mattesich owed Gale the duty of associating with outside patent counsel.

  **b. Failure to Perform a Proper Prior Art Search**

Gale alleges that Finnerty and Livingston & Mattesich breached their duty to perform a "proper" prior art search. In response, Finnerty and Livingston & Mattesich contend that (1) Gale has failed to marshal any legal authority to show the existence or scope of their alleged duty, and (2) to the extent that they did have such a duty, they conducted a prior art search that satisfies the standard of care.

11

1     This Court cannot decide, by means of summary adjudication,
2 whether or not Finnerty and Livingston & Mattesich had any duty
3 to search for prior art in this case.  As Greenberg, Livingston
4 & Mattesich and Finnerty point out, Gale has failed to muster
5 any evidence, besides the contested opinions of its experts, to
6 show that Livingston & Mattesich had a duty to search for prior
7 art in this case.  Contrary to Gale's suggestion, Livingston &
8 Mattesich's experts have not conceded the existence of such a
9 duty by not explicitly contesting it.  Rather, as Finnerty and
10 Livingston & Mattesich argue, their experts merely assumed,
11 *arguendo*, the existence of this duty in order to conclude that
12 "Livingston & Mattesich's representation did not fall below the
13 standard of care by failing to conduct an appropriate prior art
14 search."  (Tucher Report at 9:19-20).  Moreover, even if this
15 Court were to find that such a duty existed in the abstract,
16 deciding this issue would be inappropriate on summary
17 adjudication because the parties disagree sharply as to the
18 content of this alleged duty.  For instance, expert Alison
19 Tucher opined that Livingston & Mattesich met its standard of
20 care by having attorney Scott Plamondon conduct an informal
21 prior art search.  (Tucher Report at 9:1-2).  In contrast, Gale
22 insists that this very same search was insufficient to satisfy
23 Livingston & Mattesich's standard of care.
24     In addition, both parties have submitted admissible expert
25 evidence that raises a triable issue of material fact whether or
26 not Finnerty and Livingston & Mattesich breached their purported
27 duty.
28 ///

12

For example, Greenberg expert Jon Hokanson disputed the allegations of Gale's experts, and opined that "a prior art search on behalf of Gale was conducted in 2004," with the result that "there is [no] reason to believe that another prior art search would have provided Gale with a more favorable judgment or settlement."  (Hokanson Report at ¶ 31).  Accordingly, summary adjudication is inappropriate with regard to this alleged breach of duty.

### c. Failure to Consider Reexamination of the Kapusta Patent

Gale contends that Livingston & Mattesich and Finnerty breached its duty to obtain the advice of a patent attorney regarding whether or not to seek reexamination of the Kapusta patent.  Livingston & Mattesich has submitted contradictory expert testimony: "Livingston & Mattesich's representation did not fall below the standard of care by not obtaining an opinion from patent counsel as to whether to pursue reexamination of the asserted patent."  (Tucher Report at 13:15-17).  Consequently, Gale's motion for summary adjudication will be denied with respect to both the duty and breach elements of this allegation.

### d. Failure to Consider all Non-Infringement Arguments

Gale contends that Finnerty and Livingston & Mattesich had an affirmative duty to consult with competent patent counsel to consider every possible non-infringement argument.
///

13

As authority for that proposition, Gale cites to <u>Underwater Devices Inc. v. Morrison-Knudsen Co.</u>, 717 F. 2d 1380 (Fed. Cir. 1983) and <u>Golden Blount, Inc. v. Robert H. Peterson Co.</u>, 438 F. 3d 1354 (Fed. Cir. 2006).[5]  These cases, however, do not stand for the rule that Gale proposes. <u>Underwater Devices</u>, 717 F. 2d at 1389-90, held that a potential infringer must exercise due care to determine whether or not he is infringing any known patents, and to seek the advice of competent patent counsel in making this determination. <u>Golden Blount</u>, 438 F. 3d at 1368, merely reiterated the rule that a potential infringer must exercise due care to determine if he is infringing any known patents.  It also cited recent authority for the rule that the failure to obtain the opinion of patent counsel does not create a presumption of willful infringement. <u>Id.</u>  Neither of these cases placed an affirmative duty on an *attorney* defending a patent infringement suit to consult other patent counsel to discuss every possible non-infringement argument.

   Therefore, the only possible duty that could have required Finnerty and Livingston & Mattesich to make, or at least consider, other non-infringement arguments, would have to arise from an attorney's general duty "to represent his client with 'such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise.'"

---

[5] Gale concedes that <u>In re Seagate Technology, LLC</u>, 497 F. 3d 1360 (Fed. Cir. 2007)(en banc) overruled the duty to seek the advice of counsel before engaging in potentially infringing activities.  Nevertheless, Gale cites these cases to support its contention that Finnerty and Livingston & Mattesich had a duty to seek the advice of competent patent counsel *at the time of the Kapusta litigation*. (P. & A. in support of Mot. for Summ. Adjudication at 13:6-7).

14

Lipscomb, 87 Cal. App. 3d at 975 (quotation omitted).  Gale's expert asserts that Finnerty and Livingston & Mattesich had a duty to consider other non-infringement arguments.  (Beck Report at 9)("The failure to associate patent counsel and to do a proper analysis of the claims permeates the *Kapusta* case.") Livingston & Mattesich's expert, however, disagrees.  (Tucher Report at 7:14-8:16).  The disagreement between each party's experts creates a triable issue of material fact with regard to both the duty and breach elements of this allegation. Accordingly, Gale's motion for summary adjudication will be denied insofar as it asks this Court to rule that Finnerty and Livingston & Mattesich breached their alleged duty to consult outside patent counsel to consider other non-infringement arguments.

### e. **Breach of Standard of Care by Entering into the Stipulated Judgment**

Gale argues that Finnerty and Livingston & Mattesich breached their standard of care by stipulating that Gale's product infringed every claim of the Kapusta patent except for the "hand-grip size case" element.  According to Gale expert Justin Beck, "No reasonably careful attorney would have entered into a stipulation containing paragraph six."  (Beck Report at 16).  For their part, Finnerty and Livingston & Mattesich rebut this contention by citing the testimony of their experts, who opined that entering into the stipulation was prudent given the circumstances.  Alison Tucher, for example, opined that the stipulation "serve[d] her client's interests."

15

1  (Tucher Report at ¶ 41).  She also likened the stipulation to a
2  lawyer "bargain[ing] away the sleeves on her vest."  Given the
3  existence of contradictory expert testimony, this Court must
4  deny summary adjudication with respect to Gale's duty and breach
5  arguments concerning Finnerty's stipulated judgment.

### 3.   Greenberg's Successor Liability

Finally, Gale argues that Greenberg is liable as a successor entity for all malpractice claims that it can prove at trial against Livingston & Mattesich.  Although neither side provides authority for its position in the briefs submitted on the present summary adjudication motion, this Court is well aware of the successor liability dispute.  In support of its contention that Greenberg is liable as Livingston & Mattesich's successor, Gale argues that the asset transfer to Greenberg was a merger.  Since Gale has not provided any evidence of a formal merger agreement between Livingston & Mattesich and Greenberg, it must prove the existence of a de facto merger if it is to establish successor liability.

To prove that a de facto merger has occurred, a litigant must establish the existence of some or all of the following factors that courts consider: "(1) was the consideration paid for the assets solely stock of the purchaser or its parent; (2) did the purchaser continue the same enterprise after the sale; (3) did the shareholders of the seller become shareholders of the purchaser; (4) did the seller liquidate; and
///

16

1  (5) did the buyer assume the liabilities necessary to carry on
2  the business of the seller?" <u>Orthotec, LLC v. Reo Spineline,</u>
3  <u>LLC</u>, 438 F. Supp. 2d 1122, 1130 (C.D. Cal. 2006).  Gale has
4  submitted an October 13, 2005, announcement from Livingston &
5  Mattesich to its clients to support its merger theory.  That
6  announcement reads, "As of October 10, the attorneys, lobbyists,
7  facilities and operations of Livingston & Mattesich Law
8  Corporation will become the Sacramento office of Greenberg
9  Traurig, LLP."  Although this evidence lends some support to its
10 de facto merger theory, Greenberg has submitted admissible
11 evidence that challenges Gale's position.  Greenberg shareholder
12 and third-party Defendant, Kathleen Finnerty, has declared,
13 "Greenberg Traurig, LLP, did not merge with or succeed to the
14 interest of Livingston & Mattesich and has, to this day,
15 remained a complete and separate legal entity from Livingston &
16 Mattesich."  (Finnerty Decl. in Opp. To Mot. For Summ.
17 Adjudication 2:11-13).  Because both parties have submitted
18 conflicting evidence relevant to the de facto merger issue, this
19 Court finds that a triable issue of material fact exists.
20 Consequently, this Court cannot rule, on summary adjudication,
21 that Greenberg is liable as a successor to Livingston &
22 Mattesich.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

17

**CONCLUSION**

For the foregoing reasons, Gale's motion for summary adjudication is DENIED.

Dated: August 3, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

18