Rudy Nolen, SBN 59808
Stephen W. Owens, SBN 84859
**NOLEN # OWENS**
1501 28TH Street
Sacramento, California 95816
Telephone: (916) 733-0600
Facsimile: (916) 733-0601

Attorneys for Defendant and Counterclaimant
GALE CORP.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREENBERG TAURIG, LLP, a New York limited liability partnership,<br><br>Plaintiff,<br><br>vs.<br><br>GALE CORP., A California corporation also known as GALE CORPORATION,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM AND THIRD PARTY CLAIMS | Case No.: 2:07-CV-01572-MCE-DAD<br><br>**OPPOSITION TO MOTION IN LIMINE #1 FILED BY LIVINGSTON & MATTESICH AND KATHLEEN FINNERTY**<br><br>Date:       October 16, 2009<br>Time:       10:00 a.m.<br>Courtroom: 7<br>Judge:     Honorable Morrison England, Jr. |

Third party defendants Livingston & Mattesich and Kathleen Finnerty (cumulatively, "L&M") request that the court limit the scope of testimony they expect to be offered by two of Gale Corp.'s ("Gale") expert witnesses. The limitation on that testimony is not justified under the Federal Rules of Evidence.

**I.    Applicable Law**

   A.   Motions *in limine*

L&M's request is a motion *in limine*. See 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* §5037.10 (2d ed.2005). Federal Rule of Evidence 103 empowers a court to make "a definitive ruling on the record admitting or excluding evidence,

– 1 –

either at or before trial."  A pretrial motion *in limine* asks the court to decide the merits of introducing evidence without the benefit of the context of trial. *Id.; United States v. Marino,* 200 F.3d 6, 11 (1st Cir.1999) (recognizing that evidence can be more accurately assessed in the context of other evidence).  Rule 103 does not, however, require a court to rule on a motion *in limine*. Wright & Graham at §5037.18.

Regardless of a court's initial decision on a motion *in limine* it may revisit the issue at trial. Fed. R. Evid. 103 advisory committee note to 2000 Amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce v. United States,* 469 U.S. 38, 41-42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").  A "ruling on a motion *in limine* is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon,* 172 F.3d 1121, 1127 (9th Cir.1999).

### B.    The Federal Rules of Evidence Control

L&M apparently believes that California law provides the rules that control the scope of expert testimony in this case.  Not so.  The Federal Rules of Evidence, and the decisional law applying those Rules, are controlling.  Fed. R. Evid. 101 ("These rules govern proceedings in the courts of the United States … to the extent and with the exceptions stated in rule 1101).  It is black letter law that "federal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer,* 380 U.S. 460, 465 (1965). See also, *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996); *McCalla v. Royal Maccabees Life Ins. Co*., 369 F.3d 1128, 1135 (9th Cir., 2004).

The testimony that L&M seeks to prohibit—i.e, that, in Gale's experts' opinions, the Patent Office would have initiated a reexamination of the patent asserted in the underlying case, that there was a high likelihood the Patent Office would have narrowed or cancelled the patent's claims, and that the court hearing the case would very likely have stayed it pending the reexamination—is not directed to the substantive California law of professional negligence or fiduciary duty or any of L&M's affirmative defenses.  The proffered testimony merely raises the procedural question of whether it should, or should not, be heard by the jury.  As such, the applicable rules are provided

by the Federal Rules of Evidence. *Honeywell v. American Standards Testing Bureau, Inc.,* 851 F.2d 652, 656-57 (3d Cir.1988) (applying Rule 702 to the very issue presented here); *Wartsila Nsd North America, Inc. v. Hill Intern.*, 299 F.Supp.2d 400, 408-10 (D.N.J., 2003) (same and ignoring state law to the contrary).[1]

Rules 702 through 705 control the Court's inquiries into the questions of whether an expert may testify at trial and the scope of that testimony. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir., 2004). To be admissible, "expert testimony must . . . address an issue beyond the common knowledge of the average layman." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir.), amended by 246 F.3d 1150 (9th Cir. 2001). A district court has broad discretion in admitting expert testimony, and its decision will be sustained unless it is manifestly erroneous. *Taylor v. Burlington N. R.R.*, 787 F.2d 1309, 1315 (9th Cir.1986).

The Federal Rules of Evidence permit experts wide latitude in the scope and substance of their testimony.[2] Rules 702 and 704 allow an expert to testify in the form of an opinion, <u>even if it is on an ultimate issue of fact</u>, if the expert's specialized knowledge may assist the trier of fact. Fed. R. Evid. 704 ("… testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). *Securities Investor Protection Corp. v. Vigman*, 908 F.2d 1461, 1469 (9th Cir. 1990); *U.S. v. Southern California Edison Co.,* 413 F.Supp.2d 1101, 1121 (E.D. Cal., 2006).

**II.   Argument**

    A.   <u>The State Court Decisions L&M Relies Upon Do Not Control</u>

L&M relies upon two California appellate court cases for the proposition that an expert cannot testify as to what a tribunal would have, or would have likely, done had the alleged professional negligence not occurred during a proceeding. While perhaps true under California

---

[1] Federal Rule of Evidence 302 does not compel a different result. Rule 302 provides: "In civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with State law." By its terms, the Rule only applies to "presumptions" created by state law—not to expert testimony.

[2] L&M does not challenge whether Gale's proffered experts are, in fact, experts. L&M's motion only challenges the admissibility of a portion of their expected testimony.

– 3 –

Opposition to Motion in Limine #1

law, that is not true under the Federal Rules of Evidence.

The first case that L&M relies upon is clearly off point—and to the extent it is on point it supports Gale. In *Blanks v. Seyfarth Shaw* the court held the trial judge properly excluded testimony regarding whether the "discovery rule" applied in that legal malpractice case on the grounds that no California law supported the application of the rule. *Blanks v. Seyfarth Shaw* (2009) 171 Cal.App.4th 336, 375. The Court then held it was error for the trial judge to rule as a matter of law that the Seyfarth law firm was negligent—improperly taking that factual question away from the jury. *Id.* at 376. The trial judge issued his ruling after a hearing in which he heard testimony from Edwin McPherson, Seyfarth's expert, that Seyfarth attorney William Lancaster's conduct in the case did not fall below the standard of care. *Id.* at 373, 376.

The issue whether McPherson could offer that testimony at trial was <u>not</u> addressed by the court (making the case inapposite). The court did note, however, in holding that it was error take the negligence issue from the jury, that "[t]he ruling also was contrary to the only expert evidence that had been presented by McPherson, who testified that Lancaster's action did *not* fall below the standard of care." *Id.* at 376. The court went on to note that "[b]y prohibiting Seyfarth from making a complete presentation that would have included extensive testimony from Lancaster and defense experts, the trial court denied Seyfarth an opportunity to provide an explanation for its tactical decision to the jury and exceeded the trial court's powers." *Id.* at 377.

While the court did not decide whether McPherson could testify at trial that Lancaster was not negligent, the court, in part, based its reversal of the trial judge's *in limine* ruling on the fact that McPherson was ready and willing to do so. To that extent, *Blanks* <u>supports</u> Gale's position that its experts can opine on the ultimate issues that will be decided by the jury.

The second case that L&M relies upon holds exactly what L&M asserts it does: it is error for a court to allow an expert to testify in a legal malpractice case on the ultimate question of how the fact finder would have ruled in the underlying case. See, *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 973. *Piscitelli*, apparently, stands <u>alone</u> for that proposition and must be considered in light of California Rule of Evidence 805 which provides that "[t]estimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the

ultimate issue to be decided by the trier of fact."  In any event, this *Piscitelli* holding is not the law under the Federal Rules of Evidence.

### B. The Applicable Federal Court Decisions

The case of *Wartsila Nsd North America, Inc. v. Hill Intern.*, 299 F.Supp.2d 400 (D.N.J., 2003) properly applies federal law to the very issue presented.  Wartsila was a construction company that hired Hill as a consultant to assess and correct problems allegedly caused by BVI, a Wartsila subcontractor that was doing much of the project's work.  The Hill consultant sent to Wartsila was a man named LeFebvre.  On the strength of LeFebvre's analysis and recommendations, Wartsila brought claims against BVI before the American Arbitration Association.  During the proceeding it was revealed that LeFebvre had fabricated his credentials and was not, in fact, competent to discuss the engineering matters at issue.  The arbitration panel ruled for BVI and awarded it $4.65 million.

Wartsila filed suit against Hill.  A determinative issue for the jury was whether the outcome of the BVI arbitration was the result of the arbitration panel's substantive consideration of the merits of the claims or was, instead, due to the significant loss of credibility Wartsila suffered because of LeFebvre's perjury.  Wartsila produced two experts to speak to the issue.  Hill filed a motion *in limine* to exclude them from testifying.

The court ruled that one of Wartsila's experts was unqualified to offer an opinion on the matter.  The other expert, a professor of speech communication, was found qualified to opine on the effect that LeFebvre's perjury had on the arbitration panel and to then testify that "[e]ven assuming Wartsila's case had substantial merit it is highly unlikely that Wartsila could have prevailed in front of the panel because of" the panel's response to LeFebvre's testimony.  *Id.* at 407.  In permitting the jury to hear this expert opinion on the likely outcome of the arbitration, the court did not even consider the state law decisions that Hill relied upon because it held that Federal Rule of Evidence 702, and a decision of its circuit court, was the controlling law.  *Id.* at 408-10.

That circuit court decision, *Honeywell v. American Standards Testing Bureau, Inc.,* 851 F.2d 652 (3rd Cir. 1988) rejected the same argument that L&M makes here.  In *Honeywell*, the court held that Rule 702 permitted an attorney expert to testify in a legal malpractice case that the

plaintiff's defense in the underlying action "would have been successful had it been able to present expert opinion testimony" to the jury. *Honeywell,* 851 F.2d at 656. The *Honeywell* court rejected the argument that this opinion on the likely outcome of the underlying case invaded the province of the jury: "Trial Courts have broad discretion to admit evidence over the objection that it invades the province of the jury, and the Rule 702 standard usually favors admissibility. (Citation omitted). To the extent that [defendant's] argument may be interpreted to assert a violation of Fed.R.Evid. 403, we find no possibility of undue prejudice. The expert's conclusions were readily verifiable by the jury, which was presented with all of the evidence upon which the expert's opinion was based. *Id.* at 656-57.

A Ninth Circuit case is also on point. In *Hangarter v. Provident Life and Acc. Ins. Co.,* 373 F.3d 998, 1015 (9th Cir., 2004), the court held it was not improper for the trial judge to permit an expert to testify that the defendants deviated from industry standards—testimony that clearly supported the jury's finding that defendants acted in bad faith but which did not go that impermissible next step to contend that the defendants did, as a matter of law, act in bad faith. *Hangarter,* 373 F.3d at 1015-1017 (quoting *Mukhtar v. Cal. State Univ., Hayward,* 299 F.3d 1053, 1066 n. 10 (9th Cir.2002) for the rule that "an expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law.") (emphasis in original).

The advisory committee notes for Rule 702 also treats very harshly the assertion that an expert cannot opine on ultimate issues of fact that will be decided by the jury: "The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information. … The basis usually assigned for the rule, to prevent the witness from 'usurping the province of the jury,' is aptly characterized as 'empty rhetoric.'" Advisory Comment to Fed. R. Evid. 702 (quoting 7 Wigmore § 1920, p. 17.). The Comment continues: "The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions <u>afford ample assurances</u> against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day." *Id.* (emphasis added).

### C. Application of Law

As one basis for its negligence claim, Gale contends that L&M fell below the standard of care expected of patent litigation counsel by failing to request, or even to consider requesting, that the Patent Office reexamine the validity of the patent being asserted against Gale.

Gale expert Brisson will not opine, and has not opined in his expert report, that L&M's failure to request reexamination was negligent. Brisson will testify that in his opinion the Patent Office "would have" granted the reexamination request and that, at the conclusion of the proceeding, there was a "high likelihood" the Patent Office would have narrowed or cancelled the patent's claims. His opinions are based on his analysis of the facts that underlie both of those decisions—specifically, the strength of the prior art that Gale located that went unconsidered when the Patent Office first examined the patent and the historical percentages of reexamination requests granted. See L&M's Motion in Limine 1 at Exh. A at pp. 1-3 (Brisson Expert Report).

Brisson will not opine, and has not opined in his expert report, that *as a matter of law* the reexamination would have been granted and would have been successful. His expert report fully supports his opinion that, *based on the facts* in his report, the Patent Office would have granted the request and narrowed or cancelled the patent's claims. Like the experts in *Wartsila* and *Honeywell,* Brisson will testify as to how he believes the fact finder would have ruled had the defendants proceeded with a reexamination request. The jury may, or may not, agree.

Gale Expert Beck will not opine, and has not opined in his expert report, that L&M's failure to request reexamination was negligent. Beck will testify that, in his opinion, if the Patent Office had initiated a reexamination proceeding, the trial court would "very likely" have stayed the lawsuit pending the results of the reexamination. See L&M's Motion in Limine 1 at Exh. B at pp. 10-12 (Beck Expert Report). His opinion is based on his many years of experience litigating patent infringement lawsuits, which includes considering reexamination as a litigation strategy. *Id.* at pp. 1-2, 10-14. His experience is an accumulation of facts gleaned over many years.

Beck will not opine that, *as a matter of law*, the trial court would have stayed the case. Like the experts in *Wartsila* and *Honeywell,* Beck will testify as to how he believes the judge would have ruled had a reexamination been granted and a motion to stay the lawsuit was filed.

D. <u>Reciprocal Orders</u>

Stepping back a moment, it is worth noting that L&M's conduct in the underlying lawsuit resulted in Gale (the defendant in that action) <u>having the burden</u> at trial to prove by clear and convincing evidence that the patent being asserted against it was invalid. That unfortunate shift of burdens was caused by L&M stipulating to the fact that Gale's allegedly infringing product contained all the elements of the asserted patent (except one which, after remand from the Federal Circuit, Gale's product was held have as well) which, as a matter of law, meant that Gale infringed the patent.

In this action, Gale has the burden to prove it would have achieved a better result at trial but for L&M's negligence—e.g., its stipulation resulting in the burden shift (among other things). In defense of this negligence claim, L&M takes the position that the patent being asserted against Gale was invalid. Therefore, the argument goes, it could have proved invalidity at trial and so its preceding litigation conduct did not cause Gale any harm.

To establish the patent's invalidity, L&M relies upon <u>the same prior art</u> that Brisson relies on to conclude that a reexamination request would have been granted. In short, L&M is trying via this motion to exclude Brisson from testifying that, in his opinion, reexamination would have been initiated and that there was a high likelihood the patent's claims would have been narrowed or cancelled—while at the same time L&M must, by presenting the same prior art, persuade the jury by clear and convincing evidence that those patent claims are invalid. Both sides argue that the asserted patent is invalid.

Should the Court conclude that Brisson cannot opine that a reexamination request would have been granted and that there was a high likelihood the patent's claims would have been narrowed or cancelled, then L&M cannot have its expert witness testify that in the underlying case the fact finder would have found the asserted patent invalid.

**III. Conclusion**

Federal evidentiary rules apply to this case and to this particular issue. Under that law, and contrary to the holding in *Piscitell,* it is permissible—within the limits of Rules 403, 702, and 704—for experts to testify, based on their analysis of facts, as to how they believe a tribunal would

have ruled in a legal malpractice action had the defendant not engaged in the allegedly negligent conduct.

Respectfully Submitted,

**NOLEN # OWENS**

DATED: October 13, 2009    By:   /s/  Rudy Nolen
                                                   Rudy Nolen
                                                   Attorney for Gale Corp.