1  Rudy Nolen, SBN 59808
   Stephen W. Owens, SBN 84859
2  NOLEN # OWENS
   1501 28TH Street
3  Sacramento, California 95816
   Telephone: (916) 733-0600
4
   Attorneys for GALE CORP.
5

6  Daniel V. Kohls, SBN 167987
   Bret N. Batchman, SBN 236311
7  HANSEN, KOHLS, JONES, SOMMER & JACOB, LLP
   3001 Lava Ridge Court, Suite 120
8  Roseville, California 95661
   Telephone: (916) 781-2550
9
   Attorneys for LIVINGSTON & MATTESICH and KATHLEEN FINNERTY
10

11                    UNITED STATES DISTRICT COURT

12                    EASTERN DISTRICT OF CALIFORNIA

13

14
   GREENBERG TRAURIG, LLP, a New          Case No.: 2:07-CV-01572-MCE-DAD
15 York limited liability partnership,
                                          **AMENDED JOINT PRETRIAL**
16            Plaintiff,                   **STATEMENT**

17 vs.

18 GALE CORP., A California corporation also
   known as GALE CORPORATION,
19
              Defendant.
20

21 AND RELATED COUNTERCLAIM AND
   THIRD PARTY CLAIMS
22

23

24         Pursuant to the Court's Amended Pretrial (Status) Scheduling Order and Local Rule 16-

25 281, the parties respectfully submit the following:

26         **(1)  Jurisdiction and Venue:**

27         This Court has original jurisdiction over the initial complaint filed herein pursuant to the

28 Constitution of the United States, Article III, section 2, as this dispute involves a controversy

                                        – 1 –

1    between citizens of different states; and under 28 U.S.C. section 1332, which provides that the

2    district courts shall have original jurisdiction of all civil actions where the matter in controversy

3    exceeds the sum or value of $75,000, and is between citizens of different States. The amount in

4    controversy in this case exceeds the sum or value of $75,000.      Venue is proper under 28 U.S.C.

5    sections 1391(a), (b) and (d).

6        The Court has subject matter jurisdiction over Gale's professional negligence and breach of

7    fiduciary counterclaims under 28 U.S.C. sections 1331 and 1338 as these claims involve

8    substantive issues of patent law and, therefore, raise federal questions and arise under federal law.

9    *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 504 F.3d 1262

10    (Fed. Cir. 2007).    Joinder of Livingston & Mattesich ("L&M") and Kathleen E. Finnerty

11    ("Finnerty") was proper under Federal Rules of Civil Procedure 14 and 20. Venue is proper under

12    28 U.S.C. sections 1391(a), (b), and (d).

13        **(2)    Jury - Non-jury:**

14        The parties demand a jury trial on all issues in this matter.

15        **(3)    Undisputed Facts:**

16            **A.    Core Undisputed Facts as to all Claims:**

17            1.    Gale Corp. is a California Corporation with its registered place of business at P.O.

18    Box 417280, Sacramento, CA 95841.

19            2.    Joseph Kapusta is the inventor and owner of U.S. Patent No. 6,043,663 ("Kapusta

20    Patent or '663 Patent") for "Coaxial Cable Test Instruments," issued on March 28, 2000.

21            3.    Gale is the owner of U.S. Patent No. 6,437,580 ("Gale Patent") for "Cable

22    Continuity Tester and Tracer," issued on August 20, 2002.

23            4.    On June 14, 2002, Joseph Kapusta filed a complaint against Gale alleging a single

24    claim of patent infringement in the matter entitled, *Kapusta v. Gale Corporation*, United States

25    District Court for the District of Connecticut (New Haven), Case No. 3:02-cv-01034 GLG

26    (hereafter "*Kapusta v. Gale Corp.*").

27            5.    Gale was represented by Douglas John Varga and Edward R. Scofield of Zeldes,

28    Needle & Cooper located in Bridgeport, Connecticut, and William Bernheim of Bernheim,

1    Guttierez Levin and McCready located in Dixon, California.

2        6.   On May 19, 2003, the United States District Court for the District of Connecticut

3    (New Haven) granted Gale Corp.'s motion to transfer venue to the United States District Court for

4    the Eastern District of California (Sacramento).

5        7.   On May 30, 2003, *Kapusta v. Gale Corp.* was transferred to the United States

6    District Court for the Eastern District of California (Sacramento).

7        8.   On or about July 29, 2003, Gale entered into an attorney-client retainer agreement

8    with L&M to provide legal representation in *Kapusta v. Gale Corp.*

9        9.   On August 6, 2003, William Bernheim substituted out and L&M substituted in as

10   attorneys of record for Gale.

11       10.  On November 17, 2003, L&M filed a Second Amended Answer on behalf of

12   Gale.

13       11.  On May 28, 2004, both Kapusta and Gale filed Claim Construction (Markman)

14   Briefs construing the claim term "hand grip size case" in the '663 Patent.

15       12.  On June 29, 2004, the Court held a Markman Hearing, finding in favor of Gale

16   that the"hand grip size case" element in the '663 Patent "would not include a pen size device" like

17   that found in Gale's products and ordered Gale to prepare a formal order.

18       13.  On August 5, 2004, the Court signed the proposed Markman order submitted by

19   Gale ruling that a "hand grip size case" means a case in which a device is contained with a lower

20   size limit that is "no smaller than the width of an adult palm, so that it can be grasped firmly in

21   one's hand; and no smaller than 1 inch in width" and "of a rectangular shape."

22       14.  On September 20, 2004, the Court modified its Scheduling Order stating that all

23   motions for summary judgment must be filed by the parties no later than October 29, 2004 for

24   hearing on December 14, 2004.

25       15.  On October 29, 2004, the parties filed a proposed stipulation for entry of final

26   judgment with the Court.

27       16.  On November 2, 2004, the Court signed the Party Stipulation and Order ruling

28   that Gale's Pocket Toner products did not infringe on the '663 Patent as interpreted by the Court

1    on August 5, 2004, because Gale's Pocket Toners did not have a "hand grip size case."

2        17.  The Stipulation contained, among other provisions, the following:

3        "6.  The parties agree that each claim element specified in claims 1, 2 and 3 of the
         '663 patent', other than the term 'hand grip size case' described in paragraph 5
4        above, are present in the Gale Pocket Toner products."

5        "7.  Because the parties hereby stipulate to judgment of non-infringement based
         on the Court's claim construction ruling, the remaining claims and issues in
6        Kapusta summary judgment motion and in this action are moot and can be
         dismissed.  If the United States Court of Appeals of the Federal Circuit reverses
7        the Court's claim construction, then Gale may proceed with its defenses of
         invalidity and unenforceability on remand."
8

9        18.  On November 9, 2004, Kapusta filed a Notice of Appeal.

10       19.  On or about January 24, 2005, Kapusta filed its Opening Brief in the United States

11   Court of Appeals for the Federal Circuit, Case No. 05-1091.

12       20.  On or about March 24, 2005, Gale filed its Responsive Brief in the United States

13   Court of Appeals for the Federal Circuit, Case No. 05-1091.

14       21.  On or about April 7, 2005, Kapusta filed its Reply Brief in the United States Court

15   of Appeals for the Federal Circuit, Case No. 05-1091.

16       22.  On or about October 7, 2005, the United States Court of Appeals for the Federal

17   Circuit heard oral arguments from the parties regarding Kapusta's appeal from the District Court's

18   Claim Construction ruling.

19       23.  On November 15, 2005, the United States Court of Appeals for the Federal Circuit

20   issued its order reversing the District Court's Markman ruling, finding that the term "hand grip

21   size case" means "a case that can be gripped in a normal hand," thus reversing the District Court's

22   ruling of non-infringement and remanding the case back to the District Court.

23       24.  On or about August 25, 2006, Kapusta filed three motions for summary judgment:

24   (1) motion for summary judgment of infringement; (2) motion for summary judgment of no

25   invalidity under 35 U.S.C. section 103(a) [obviousness]; (3) motion for summary judgment of no

26   invalidity under 35 U.S.C. section 102(b) [anticipation].

27       25.  Gale also filed a motion for summary judgment as to patent invalidity and

28   unenforceability.

– 4 –

26. On October 16, 2006, the District Court issued its order regarding the motions for summary judgment filed by the parties.

27. In its Order, the Court (1) granted Kapusta's motion for summary judgment as to infringement; (2) denied Kapusta's motion for summary judgment as to no invalidity under 35 U.S.C section 103(a) finding a triable issue as to whether Kapusta's patent was obvious at the time of invention to those having ordinary skill in the relevant art; (3) denied Kapusta's motion for summary judgment as to no invalidity under 35 U.S.C. section 102(b) finding that the Ross Patent (U.S. Patent No. 4,281,283) could constitute relevant prior art to invalidate the '663 Patent under the doctrine of anticipation.

28. The Court also denied Gale's motion for summary judgment as to patent invalidity and unenforceability, finding the existence of triable issues of material fact.

29. On November 17, 2006, the Court issued its final Pre-Trial Conference Order.

30. On or about February 10, 2007, the parties entered into a settlement agreement and a patent license agreement.

31. On February 23, 2007, the Court signed the parties' Stipulation and Order dismissing the action; the Court retained jurisdiction for purposes of enforcement of the parties' settlement agreement.

32. The '663 Patent is a continuation of application No. 06/541,548 filed on October 13, 1983 ("Priority Date").

33. U.S. Patent No. 4,281,283 issued to Ross ("Ross Patent") was not before the examiner at the time the '663 patent issued.

34. U.S. Patent No. 1,372,570 issued to Smith ("Smith Patent") was not considered by the patent examiner during prosecution of the '663 patent.

35. U.S. Patent No. 2,413,484 issued to Berger ("Berger Patent") was not considered by the patent examiner during prosecution of the '663 patent.

36. U.S. Patent No. 2,459,351 issued to Weincord ("Weincord Patent") was not considered by the patent examiner during prosecution of the '663 patent.

///

Amended Joint Pretrial Statement

**B.  Core Undisputed Facts as to Gale's Professional Negligence Claim Against L&M and Finnerty**

37.  "Prior art" consists of all U.S. and foreign-issued patents and all other publications published worldwide before the filing date of the application that matured into the '663 patent.

38.  Before representing Gale Corp., Finnerty had never previously appealed a Markman ruling.

39.  Finnerty is not registered with the United States Patent and Trademark Office.

**C.  Core Undisputed Facts as to Gale's Defenses in the Underlying Action of Inequitable Conduct by Kapusta, Unenforceability of the '663 Patent and Patent Misuse**

40.  Mr. Kapusta filed his initial application with the Patent Office on October 13, 1983.

41.  In 1983-84, Mr. Kapusta entered into a distributorship agreement with Lemco through which Lemco would manufacture and distribute a product believed to be covered by the pending application.

42.  By at least 1984, Mr. Kapusta began receiving royalty payments from Lemco pursuant to their agreement, and he received such royalty payments until 1991.

43.  On November 1, 1985, the U.S. Patent Office issued a Final Office Action in the prosecution of the application.

44.  On June 10, 1986, the U.S. Patent Office issued a Notice of Abandonment that the application had become abandoned as a result of Mr. Kapusta's failure to respond to the outstanding Final Office Action of November 1, 1985.

45.  On August 7, 1991, Lemco stopped paying royalties to Mr. Kapusta, and Lemco wrote to Mr. Kapusta the following letter:

> "In as much as Lemco is not protected with a patent and has competition who is not paying you a commission, we can't afford it either.  Should you obtain a patent, perhaps you can shut-down Cable Pro and recover damages.  At this point, we could resume our arrangement."

46.  On October 28, 1991, Mr. Kapusta filed a petition to revive the application pursuant to 37 C.F.R. 1.137(a) on the grounds that the application's abandonment was unavoidable

– 6 –

1  ("First Petition").

2      47.  The only evidence Mr. Kapusta submitted in support of his First Petition  was his
3  own affidavit.

4      48.  In his affidavit, Mr. Kapusta argued that the abandonment was unavoidable
5  because of the loss of communication between him and his patent attorney Mr. Spruegel due to (a)
6  Mr. Kapusta's kidney cancer, (b) the financial losses resulting from the costs associated with
7  treating the cancer, and (c) possibly Mr. Spruegel's old age and the fact that he was working out of
8  his home.  In addition, Mr. Kapusta argued that the death of his patent attorney, Mr. Spruegel,
9  "further complicated [his] desire to protect [his] rights."

10      49.  On December 17, 1991, the Patent Office dismissed Mr. Kapusta's First Petition
11  and  on March 5, 1992, Mr. Kapusta filed a renewed petition to revive the application ("Renewed
12  Petition").

13      50.  In the Renewed Petition, Mr. Kapusta asserted as grounds for the delay: "[A]n
14  unavoidable series of events occurred including the loss of communication between the applicant
15  and his original attorney, Mr. Spruegel, caused by the applicant's moves; the fact that Mr. Spruegel
16  was working out of his home which likely engendered the loss of communication; the subsequent
17  death of Mr. Spruegel; and the subsequent efforts undertaken by applicant to ascertain the status of
18  his application and attempt informally to effect a revival."

19      51.  Mr. Kapusta did not inform the Patent Office, in connection with both the First
20  Petition and the Renewed Petition (collectively, "Petitions") that he had been receiving royalty
21  payments from Lemco in connection with the sale of products believed to be covered by the
22  application from 1984 until just two months before the First Petition in 1991.

23      52.  On May 29, 1992, the U.S. Patent Office granted the Renewed Petition, reviving
24  the application.

25      53.  On July 18, 1992, Mr. Kapusta filed with the Patent Office a terminal disclaimer
26  disclaiming the last 73 months of the term of the '663 patent.

27      54.  The '663 patent expires on February 28, 2011.

28  ///

**(4) Disputed Factual Issues:**

**35 U.S.C. Section 102 (Anticipation/On-Sale Bar)**

1.   Whether or not the '663 patent was "anticipated" by the relevant prior art before its invention pursuant to 35 U.S.C. section 102.

2.   Whether or not U.S. Patent No. 4,281,283 (Ross Patent) discloses each and every claim limitation of claims 1, 2 and 3 or the '663 patent.

3.   Whether or not on or before March 26, 1982, Kapusta disclosed the subject matter of his invention to Affiliated Investors Foundation, Inc. ("AIF"), under no confidentiality conditions, markings or warnings.

4.   Whether or not the subject matter of the '663 patent was on sale, offered for sale or in public use more than one year before the Priority Date.

5.   Whether or not Kapusta's disclosure of the subject matter of his invention to AIF occurred more than one year before the Priority Date.

6.   Whether or not at the end of 1981 or at the beginning of 1982, Kapusta sold between 50-100 units of the invention covered by the '663 patent.

7.   Whether or not in 1981 or 1982, Kapusta sold multiple units of the invention covered by the '663 patent to Cox cable.

**35 U.S.C. Section 103(a) (Obviousness)**

8.   Whether or not U.S. Patent No. 1,372,570 (Smith Patent), alone or in combination with another reference, reaches or suggests each and every claim limitation of claims 1, 2 and 3 of the '663 patent.

9.   Whether or not U.S. Patent No. 2, 413,484 (Berger Patent) alone or in combination with another reference, reaches or suggests each and every claim limitation of claims 1, 2 and 3 of the '663 patent.

10. Whether or not U.S. Patent No. 2,459,351 (Weincord Patent) alone or in combination with another reference, reaches or suggests each and every claim limitation of claims 1, 2 and 3 of the '663 patent.

11. Whether or not U.S. Patent No. 4,281,283 (Ross Patent) alone or in combination

1  with another reference, reaches or suggests each and every claim limitation of claims 1, 2 and 3 of
2  the '663 patent.

3        12.  Whether or not U.S. Patent No. 4,553,085 alone or in combination with another
4  reference, reaches or suggests each and every claim limitation of claims 1, 2 and 3 of the
5  '663 patent.

6        13.  Whether or not the '663 Patent was obvious at the time of invention to one have
7  ordinary skill in the art pursuant to 35 U.S.C. section 103.

8        14.  Whether or not the Bagwell report and its content and conclusions, provide
9  evidence that the '663 patent was obvious at the time of invention to one having ordinary skill in
10  the art pursuant to 35 U.S.C. section 103.

11        **Inequitable Conduct, Unenforceability and Patent Misuse**

12        15.  Whether or not the U.S. Patent Office's decision to revive the patent application
13  for U.S. Patent No. 6,043,663 was arbitrary or capricious under the Administrative Procedure Act.

14        16.  Whether or not Mr. Kapusta committed inequitable conduct before the U.S. Patent
15  Office in the revival of the patent application that because U.S. Patent No. 6,043,663.

16        17.  Whether or not Mr. Kapusta committed inequitable conduct before the U.S. Patent
17  Office by failing to disclose sales of products embodying the claimed subject matter more than one
18  year before the priority date.

19        18.  Whether or not Mr. Kapusta engaged in conduct proscribed by the patent misuse
20  doctrine.

21        19.  Whether or not Mr. Kapusta had a conversation shortly after November 1, 1985
22  with his patent attorney, Walter Spruegel, who indicated that "there was a possibility the
23  [Application] could go abandoned if further action was not taken."  During this conversation,
24  Mr. Kapusta instructed Mr. Spruegel to "delay taking any action 'as long as you can.'"

25        20.  Whether or not in a March 22, 1991 letter, Mr. Glenn Miller of Lemco wrote to
26  Mr. Kapusta concerning a third party who was selling a competing product.  Miller wrote: "Joe -
27  Please check with your patent attorney as to what our position is.  Can you stop this guy?  Lemco
28  is selling your unit at $38.64 and Cable Pro/Budco is priced at $25."  On the envelope in which

1  this memorandum was received, Kapusta wrote the telephone number for the Patent Office.

2      21. Whether or not the Patent Office noted that it dismissed the Petition because it
3  lacked, inter alia, "an adequate verified showing of the cause of the unavoidable delay."
4  Specifically, the Office stated that Mr. Kapusta was required to submit the following:  (a) a
5  verified statement by all persons with direct knowledge of the cause of the delay, setting forth the
6  facts as they know them, including a statement from Mr. Spruegel's widow, his secretary, if any,
7  or any other patent attorney associated with Mr. Spruegel's practice; (b) a verified showing of the
8  responsible person's financial condition at the time, including assets, credit and obligations, which
9  made the delay in payment of the fee unavoidable, including verified copies of any documents or
10 records that would confirm the financial difficulty; and (c) the demonstration of a nexus between
11 the lack of diligence in filing a timely petition to revive and the asserted financial difficulty.

12     22. Whether or not during the prosecution of the'663 Patent, Mr. Kapusta did not
13 disclose to the Patent Office the sales discussed above.

14     23. Whether or not Mr. Kapusta proposed a license agreement to Gale Corp. in
15 connection with his cease and desist letter of June 19, 2002.  The proposed agreement was for a
16 non-exclusive license under the '663 Patent and provided that Gale "shall pay" Mr. Kapusta a
17 royalty for each licensed product sold through the year 2017.  The June 19, 2002 cease and desist
18 letter indicated that the terms of the proposed agreement were not flexible and were financially
19 identical to the terms of the license agreements Kapusta had with Lemco Tool and ICM.

20     24. Whether or not the license agreement between Mr. Kapusta and ICM provides for
21 royalty payments due to Mr. Kapusta through the year 2017.

22     25. Whether or not in September of 1984, Mr. Kapusta was diagnosed with kidney
23 cancer and his right kidney was removed.

24     26. Whether or not Mr. Kapusta lost his house and business as a result of financial
25 losses brought about by the cost of his cancer treatment and moved in with family in June 1985.

26     27. Whether or not Mr. Kapusta stopped receiving phone calls from Mr. Spruegel in
27 1986 without explanation.

28     28. Whether or not in 1988, Mr. Spruegel died.

29. Whether or not in 1989 Mr. Kapusta learned for the first time that Mr. Spruegel had died.

30. Whether or not Mr. Kapusta tried to contact Mr. Spruegel's widow to obtain the file for the application, but was unable to contact her.

31. Whether or not on July 22, 1991, and in connection with the application, Mr. Kapusta filed with the U.S. Patent Office a revocation of all previous powers of attorney, including that for Mr. Spruegel, and appointed a new power of attorney to the law firm of St. Onge Stewart Johnston & Reens LLC.

### Disputed Facts as to Gale's Malpractice Claims Against L&M and Finnerty

32. Whether patent litigation is a specialized field of law.

33. Whether Finnerty ever tried a patent infringement case before representing Gale.

34. Whether before representing Gale, Finnerty ever counseled with a client about or participated in a petition for ex parte reexamination of a patent.

35. Whether Finnerty was qualified to conduct a prior art search and whether she performed one in the underlying matter.

36. Whether before representing Gale, Finnerty had ever previously appealed a Markman ruling.

37. Whether before representing Gale, Finnerty had any experience with appeals from a Markman hearing.

38. Whether Finnerty had insufficient expertise in patent law to adequately represent Gale in the *Kapusta v. Gale Corp.* case.

39. Whether Finnerty or L&M failed to disclose to Gale that Finnerty lacked sufficient experience and qualifications to comply with the standard of care to defend Gale.

40. Whether Finnerty or L&M had a duty to Gale to fully disclose Finnerty's alleged inexperience and lack of qualification and breached that duty causing damages to Gale.

41. Whether the standard of care applicable to Finnerty required her to act as a patent litigator in her representation of Gale and whether she breached such duty causing damages to Gale.

42. Whether the standard of care applicable to Finnerty and L&M required them to retain or consult with a registered patent attorney in preparation for Gale's defense and whether they breached such duty causing damages to Gale.

43. Whether the standard of care applicable to Finnerty and L&M required them to prepare infringement and validity claim charts and whether they breached such duty causing damages to Gale.

44. Whether the standard of care applicable to Finnerty and L&M required them to investigate and petition for an *ex parte* reexamination of the Kapusta patent and whether they breached such duty causing damages to Gale.

45. Whether the standard of care applicable to Finnerty and L&M required them to advise Gale of the strategic benefits of reexamination and the probability of invalidating the Kapusta patent and the probability of staying proceedings in the District Court and whether they breached such a duty causing damages to Gale.

46. Whether Finnerty and L&M failed to comply with the standard of care by unnecessarily including in the Stipulation for Entry of Final Judgment a provision stating infringement of all the limitations of the '663 patent, except for "hand-grip size case."

47. Whether Finnerty and L&M breached the duty to comply with the standard of care by excluding the limitations of the '663 patent, except for 'hand-grip size case' and whether such alleged breach caused Gale damages.

48. Whether Finnerty or L&M failed to comply with the standard of care by not performing or causing to be performed an adequate prior art search and whether such alleged breach caused Gale damages.

49. Whether an adequate prior art search would have shown that the '663 patent was invalid.

50. Whether the standard of care applicable to Finnerty and L&M required them to search for non-patent art and whether they breached that duty causing damages to Gale.

51. Whether the standard of care applicable to Finnerty and L&M required them to consult a patent attorney to evaluate if it was in Gale's best interests to file an *ex parte*

1  reexamination of the '663 patent and whether they breached such duty causing damages to Gale.

2    52. Whether The Stipulation for Final Entry of Judgment entered into between

3  Kapusta and Gale on October 28, 2004, in which they agreed that the elements of Claims 1, 2 and

4  3 were present in the Gale product failed to comply with the standard of care.

5    53. Whether Finnerty and L&M had a duty to comply with the standard of care by

6  evaluating the provisions of the stipulation, its potential consequences on appeal and to inform

7  Gale not to enter into the stipulation and breached that duty causing damages to Gale.

8    54. Whether L&M and Finnerty prepared an "infringement" claim chart.

9    55. Whether L&M and Finnerty prepared a "validity" claim chart.

10    56. Whether Finnerty ever previously participated in a Markman hearing before

11  representing Gale.

12    57. Whether Gale sustained any damages as a result L&M and/or Finnerty's alleged

13  breaches.

14    58. Whether Gale had any conversations or agreements with Fluke Corporation

15  regarding a buyout of Gale.

16    59. Whether Gale had any conversations or agreements with Ideal Industries

17  regarding a buyout of Gale.

18    60. Whether Gale suffered any inability to conduct research and/or development as a

19  result of the underlying *Kapusta v. Gale* case.

20    61. Whether Gale substantially contributed to its litigation costs by refusing

21  reasonable settlement offers from Kapusta.

22    62. Whether Gale was unwilling to settle its claims with Kapusta in the underlying

23  litigation until February 2007.

24    63. Whether "anticipation" was an affirmative defense available to Gale at the time of

25  the underlying trial because it was omitted in the Pretrial Conference Order.

26    64. Whether Gale ever made a profit in any calendar year since its incorporation.

27    65. Whether Gale was represented by Bradley Heisler, a member of the patent bar,

28  from 2003-2006.

66. Whether Mr. Heisler was involved in the preparation for the Markman hearing, appeared at the Markman hearing with Finnerty and whether he participated in the drafting of the stipulation.

67. Whether Gale's Pocket Toners infringed the '663 patent.

(5) **Disputed Evidentiary Issues:**

All of the parties have filed motions in limine and *request that each motion be heard and resolved* on October 22, 2009 at the already-scheduled hearing for those matters.

In short, L&M and Finnerty object to the testimony of Alan Kirkpatrick and Ilhan Geckil of Anderson Economic Group on the grounds that they were not properly disclosed as experts and their proposed testimony is speculative. L&M and Finnerty also object to the testimony of Patrick Anderson of Anderson Economic Group as no expert report was prepared by Mr. Anderson pursuant to FRCP 26(a)(2)(B). L&M and Finnerty also object to any expert opinions that Gale intends to offer in this matter which were not disclosed pursuant to FRCP 26(a)(2).

(6) **Special Factual Information in Certain Actions:**

(i) Actions Involving Patents:

While this action is not itself a patent action, the underlying case was a patent infringement lawsuit. Accordingly, the parties set forth the required information for patent litigation here.

(A) The Name, Number Filing and Issue Date of the Patent(s) Involved:

1. Kapusta, U.S. Patent No. 6,043,663, filed on July 16, 1992,    issued on March 28, 2000 ("Kapusta Patent").

2. Gale, U.S. Patent No. 6,437,580; filed on November 12, 1999, issued on August 20, 2002 ("Gale Patent").

(B) The Names of All Persons Claiming a Present Interest in Each Patent:

1. There are no disputes regarding ownership interests in the patents.

(C) Abstracts of the Patents:

1. Kapusta: There are two coaxial cable test instruments, of which a primary instrument provides a rump circuit having a battery, a first electric signal device and two

– 14 –

1   probes in series-connection with each other, of which the probes are in the form of the central

2   conductor and surrounding shield parts of a typical coaxial cable connector.   The other or

3   secondary instrument provides a second electric signal device which is connected with two further

4   probes in the form of the central conductor and surrounding shield parts of another coaxial cable

5   connector. To test a cable component for a short-circuit, the primary instrument is connected with

6   one of the end connectors to the cable. If the first signal device, or instance a light bulb, then

7   lights up on closure of the rump circuit via the short-circuit bridge between the central conductor

8   and surrounding shield of the cable, the lighted bulb does not light up and thereby indicates that

9   there is no short-circuit.  For a conductivity test of the cable component, both instruments are

10  connected with both end connectors on the cable.  If the rump circuit is then closed via the

11  conductor and shield parts of the cable and the second signal device of the secondary instrument,

12  both signal devices will operate and thereby indicate conductivity of the cable.  Conversely, if

13  both signal devices fail to operate, this is a clear indication that the cable lacks conductivity.

14              2.   Gale: A cable continuity tester and tracer includes a cylindrical barrel

15  housing a battery, a cable connector with two contacts, a bicolor LED and a detachable, tone-

16  generating portion.  A circuit board in continuity with the battery, LED and both contacts of the

17  connector permits the LED to glow red upon encountering a short in a tested cable, and to glow

18  green upon encountering a low-resistance terminator on the cable of from 50-75 ohms.  The tone

19  generating portion issues an audible signal when placed on an opposite end of a cable from the

20  tester, when the cable has good continuity.

21              (D) Statement of Facts Relied Upon:

22              1.   L&M and Finnerty claims that Gale's product infringed all of the

23  claimed elements of the '663 patent.

24       As applicable to claim 1 of the '663 patent, a portable test instrument for coaxial cable,

25  which comprises; a test circuit comprising, in series, a battery; a device capable of generating a

26  signal in response to completion of said circuit; a first probe and a second probe, wherein said first

27  probe and said second probe comprise a central conductor and surrounding shield, respectively, of

28  a test circuit connector which is releasably connectable to a coaxial cable connector mounted on a

1    first end of the coaxial cable to be tested; such that a short circuit in the coaxial cable to be tested

2    will complete said test circuit and cause said signal device to generate a signal; and a hand-grip

3    size case in which said test circuit is mounted, where said test circuit connector is mounted on the

4    outside of said case.

5          As applicable to claim 2 of the '663 patent, a portable test instrument according to claim 1,

6    in which said battery is mounted in said case.

7          As applicable to claim 3 of the '663 patent, a portable test instrument for coaxial cable;

8    comprising a first test circuit which comprises, in series, a battery, a first probe, and a second

9    probe, wherein said first probe and said second probe comprise a central conductor and

10   surrounding shield, respectively, of a test circuit connector releasably connectable to a coaxial

11   cable connector mounted on a first end of the coaxial cable to be tested; a second test circuit which

12   comprises, in series, a device capable of generating a signal in response to a completion of a

13   circuit involving said first test circuit, said second test circuit and the coaxial cable to be tested; a

14   third probe, and a fourth probe, wherein said third probe and said fourth probe comprise a central

15   conductor and surrounding shield, respectively, of a second test circuit connector releasably

16   connectable to a coaxial cable connector mounted on a second end of the coaxial cable to be

17   tested; such that connection of said first test circuit connector to the coaxial cable connector

18   mounted on the first end of the coaxial cable to be tested and connection of said second test circuit

19   connector to the connector mounted on the second end of the coaxial cable to be tested will

20   complete a circuit involving said first test circuit, said second test circuit, and said coaxial cable

21   when there is no short circuit in said coaxial cable, and thereby cause said signal device to

22   generate a signal; and a hand-grip size case in which said test circuits are mounted, where said test

23   circuit are mounted on the outside of said case.

24         2.   Gale claims that its accused products did not infringe the Kapusta patent

25   based on the expert reports of Justin Beck and Timothy Brisson, as well as other evidence Gale

26   Corp. will produce at trial.

27   ///

28   ///

      (E)  <u>Where Invalidity of a Patent has been Asserted as a Defense, any and all Prior Art (Patents, Publications and Public Use) Pleaded in the Answer or Noticed Pursuant to 35 U.S.C. §282, in relation to the Defense Invoked, Whether the Defense be 35 U.S.C. §102 (Anticipation) or 35 U.S.C. §103 (Obviousness):</u>

The references cited by L&M and Finnerty as prior art to U.S. Patent No. 6,043,663 (Kapusta Patent) are: U.S. Patent No. 4,281,283; U.S. Patent No. 1,372,570; U.S. Patent No. 2,413,484; U.S. Patent No. 2,459,351; U.S. Patent No. 4,553,085; and the references cited during the prosecution of the Kapusta Patent.

      (F)  <u>An Explanation of any Interparty Tests that have been Conducted and a Request for such Interparty Tests as Should be Ordered before Setting for Trial:</u>

Not applicable

**(7)**  <u>**Relief Sought:**</u>

Gale seeks money damages from L&M and Finnerty due to their malpractices and breaches of fiduciary duties to Gale while representing Gale in the Kapusta lawsuit. In particular, Gale seeks money damages for the harm caused to its business and for the attorneys' fees Gale alleges were unnecessarily paid to L&M.

**(8)**  <u>**Points of Law:**</u>

1.  The elements, standards, and burden of proof of a claim for patent invalidity due to obviousness.

2.  The elements, standards, and burden of proof of a claim for patent invalidity due to anticipation.

3.  The elements, standards, and burden of proof for attorney malpractice, generally and for attorney specializing in patent litigation, causation and damages.

4.  The elements, standards, and burden of proof for attorney fiduciary duty, causation and damages.

5.  The elements, standards, and burden of proof for patent infringement.

6.  The elements, standards, and burden of proof of a claim of non-infringement.

///

**(9)  Abandoned Issues:**

L&M and Finnerty do not anticipate abandoning any claims or defenses raised in their pleadings.

**(10)  Witnesses:**

Pursuant to the Amended Pretrial (Status) Order filed August 22, 2008, at page 8, lines 5-14, the lists of the parties' witnesses which they anticipate calling at trial are attached as separate documents to be used as addenda to the Final Pretrial Order.

Due to the resolution of claims between Greenberg Traurig and Gale, L&M and Finnerty hereby withdraw Jon E. Hokanson from their witness list.

**(11)  Exhibits:**

Pursuant to the Amended Pretrial (Status) Order filed August 22, 2008, at page 8, lines 5-14, the lists of the parties' exhibits were filed on September 4, 2009.

Due to the resolution of claims between Greenberg Traurig and Gale, the Exhibit Lists filed on September 4, 2009 are hereby amended as follows:  Neither L&M nor Finnerty shall refer to, seek to admit, or admit into evidence Exhibit Nos.: 57, 168, 171, 173, 177.  This list of documents identified include Exhibits 173 and 177, the expert reports of Jon E. Hokanson, but it does not include Exhibit 59, a memorandum by attorney Todd Landis, which shall be admissible for all purposes.  Additionally, the Parties agree that the fundamental requirements of foundation and authentication must be made for exhibits 60-67, 81-85, and 87-121.

**(12)  Discovery Documents:**

L&M and Finnerty expect to offer the following interrogatory responses at trial:

a.    Gale's Responses to Greenberg Traurig's Interrogatories, Set One, Nos. 1-5, 7-8, 11-14, 18.

b.    Gale's Responses to L&M's Interrogatories, Set One, Nos. 1-11, 13, 16-18, 20.

c.    Gale's Responses to L&M's Interrogatories, Set Two, Nos. 21, 23, 25, 27, 29-30, 33-34.

d.    Gale's Responses to Finnerty's Interrogatories, Set One, Nos. 1-2.

e.    Gale's Responses to Finnerty's Interrogatories, Set Two, Nos. 3-10, 12-35.

1          L&M and Finnerty expect to offer the following request for admissions responses at

2    trial:  Gale's Responses to Greenberg Traurig's, Request for Admissions, Set One, Nos. 1-7, 9, 10,

3    11, 12, 13, 17-22, 24.

4          Gale Corp. expects to offer the following interrogatory responses at trial:   L&M's

5    Responses to Gale's Interrogatory, Set 2, Nos. 3, 4, 5, 7, 9, 11, 12, 13 and 15

6          The parties reserve the right to cross-examine witnesses based upon sworn deposition

7    testimony, if necessary.

8          **(13)  Further Discovery or Motions:**

9          The parties do not presently anticipate any further discovery or pre-trial motions, except

10   motions in limine which will be briefed within the time frames set forth by the Court in its Final

11   Pre-Trial Order.

12         **(14)  Stipulations:**

13         The parties stipulate to not make any objections regarding foundation or authenticity of the

14   exhibits listed in each party's exhibit list attached to this Joint Pre-Trial Statement.

15         **(15)  Amendments - Dismissals**

16         The parties do not anticipate any further amendments to pleadings, dismissals, additions or

17   substitutions of parties.

18         **(16)  Settlement Negotiations:**

19         The parties have attended mediation but were unsuccessful. Informal settlement

20   discussions are ongoing.

21         **(17)  Agreed Statement:**

22         The parties do not believe that presentation of all or part of this case upon an Agreed

23   Statement is feasible or advisable.

24         **(18)  Separate Trial of Issues:**

25         Gale's burden of proof regarding a portion of the causation element requires it to show by

26   a preponderance of the evidence that it should have obtained a better result than it did.

27   Accordingly, L&M and Finnerty seek bifurcation of the but for aspect of the causation element to

28   require Gale to prove that it should have obtained a better result before introduction of evidence

1   regarding other elements.

2        Gale, while agreeing that a portion of its causation burden requires it to prove by a

3   preponderance of evidence that Gale would have obtained a better result in defending the *Kapusta*

4   case, Gale takes exception to plaintiffs' request for bifurcation.

5        **(19)  Impartial Experts - Limitation of Experts:**

6        The parties do not see any need for the appointment by the Court of impartial expert

7   witnesses. Additionally, the parties agree that there is no need for the Court to limit the amount of

8   expert witnesses in this matter.

9        **(20)  Attorneys' Fees:**

10       No party presently seeks recovery of attorneys' fees for prosecuting or defending any of

11  the claims in this action.

12       **(21)  Trial Exhibits:**

13       The parties do not anticipate the need for special handling of trial exhibits.

14       **(22)  Miscellaneous:**

15       The parties do not have any additional comments, suggestions or information to

16  supplement this Joint Pre-Trial Statement.

17       **(23)  Claims of Privilege:**

18       There are no anticipated claims of privilege.

19  **Additional Disclosures Required by Court's Amended Pretrial Scheduling Order**

20       **A.  Plain, Concise Statement of Non-Discovery Motions Tendered to the Court**

21       (1)  Gale's Motion to Modify Pretrial Scheduling Order to Extend Discovery Deadlines

22       On July 25, 2008, Gale filed a Motion to Amend the Pretrial Scheduling Order. L&M and

23  Finnerty filed a partial opposition on August 5, 2008.   On August 8, 2005, the Court granted

24  Gale's motion in its entirety.

25       (2)  Gale's Second Motion to Modify Pretrial Scheduling Order to Rectify its Error in
         Failing to Timely Exchange Expert Witness Reports
26
27       On March 17, 2009, Gale filed a Motion to Modify the Court's Amended Pretrial

28  Scheduling Order after it failed to provide expert witness reports at the expert disclosure deadline.

1   On March 26, 2009, L&M and Finnerty filed oppositions. Gale filed its reply and declaration of

2   Rudy Nolen March 30, 2009.    On March 31, 2009, L&M and Finnerty filed their objection to

3   Gale s reply and declaration of Rudy Nolen.    On April 7, 2009, the Court granted Gale's Motion

4   in its entirety.

5                    (3)   Greenberg Traurig's Motion for Summary Judgment of Claims it Brought

6           On May 14, 2009, GT brought a motion for summary judgment seeking to collect its

7   outstanding attorney fees and costs from Gale Corp. Gale filed its opposition on May 28, 2009.

8   GT's filed its reply on June 4, 2009. On August 4, 2009, the Court denied GT's motion for

9   summary judgment in its entirety.

10                   (4)   GT and Finnerty's Motion for Summary Judgment/Adjudication For Claims
                           Occurring After October 10, 2005
11

12          On May 14, 2009, GT and Finnerty brought a motion for summary judgment for any all

13  acts and/or omissions occurring on or after October 10, 2005. Gale filed its opposition on May 28,

14  2009. GT and Finnerty filed their reply on June 4, 2009. On August 4, 2009, the Court denied

15  GT's motion for summary judgment/adjudication in its entirety.

16                   (5)   Gale's Motion for Summary Adjudication of Breach and Duty Elements

17          On May 14, 2009, Gale filed a motion for summary adjudication seeking to summarily

18
    adjudicate the elements of duty and breach of its professional negligence and breach of fiduciary
19

20  duty claims. On May 28, 2009, L&M and Finnerty filed their opposition. On June 1, 2009, the

21  Court denied Gale's motion without prejudice as Gale failed to cite to evidentiary support in its

22  separate statement of undisputed facts.

23                   (6)   Gale's Motion to Vacate Court's Dismissal of Gale's Motion for Summary
                           Adjudication
24

25          On June 5, 2009, Gale filed a motion to vacate the Court's June 1, 2009, minute order

26  regarding its motion for summary adjudication, setting the hearing on June 11, 2009. On June 8,

27  2009, the Court denied the motion for failing to follow the statutory notice requirements.

28

(7)  Gale's Motion for Shortened Time

On June 8, 2009, Gale filed a request to be heard on shortened time its motion for summary adjudication.  On June 10, 2009, the Court ordered that all motions for summary judgment/adjudication are to be heard on July 16, 2007, and ordered Gale to re-file its motion for summary adjudication.

(8)  Gale's Motion for Summary Adjudication of Breach and Duty Elements

On June 11, 2009, Gale filed a motion for summary adjudication seeking to summarily adjudicate the elements of duty and breach of its professional negligence and breach of fiduciary duty claims.  On July 2, 2009, L&M and Finnerty filed their opposition.  On August 4, 2009, the Court denied Gale's motion for summary adjudication in its entirety.

**B.  Disputed Evidentiary Issues Which Will Be the Subject of a Motion in Limine**

All of the parties have filed motions in limine and *request that each motion be heard and resolved* on October 22, 2009 at the already-scheduled hearing for those matters.

In short, L&M and Finnerty object to the testimony of Alan Kirkpatrick and Ilhan Geckil of Anderson Economic Group on the grounds that they were not properly disclosed as experts and their proposed testimony is speculative.  L&M and Finnerty also object to the testimony of Patrick Anderson of Anderson Economic Group as no expert report was prepared by Mr. Anderson pursuant to FRCP 26(a)(2)(B).  L&M and Finnerty also object to any expert opinions that Gale intends to offer in this matter which were not disclosed pursuant to FRCP 26(a)(2).

**C.  Joint Statement of the Case**

"Gale claims that Kathleen Finnerty and her law firm, the Livingston & Mattesich Law Corporation, committed malpractice and breached their fiduciary duties to Gale when they defended the company in a patent infringement lawsuit.  That lawsuit, which we will call the "Kapusta Case," was based on the claim that Gale was infringing a patent owned by Joseph Kapusta.  Gale and Joseph Kapusta settled that lawsuit before trial.  Ms. Finnerty and her law

Amended Joint Pretrial Statement

1  firm, Livingston & Mattesich, deny they did anything wrong when representing Gale and assert

2  that they met the standard of care applicable to them."

3  Respectfully submitted,

4  DATED:  October 20, 2009                    NOLEN & OWENS

5                                               By:  /s/  Rudy Nolen

6                                                    Rudy Nolen
                                                     Attorney for Gale Corp.
7

8  DATED: October 20, 2009                     HANSEN, KOHLS, JONES, SOMMER
9                                               & JACOB, LLP

10                                              By:  /s/  Daniel V. Kohls

11                                                   Daniel V. Kohls
                                                     Attorneys for Livingston & Mattesich and
12                                                   Kathleen Finnerty

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28