1 | DANIEL V. KOHLS (State Bar No. 167987)
BRET N. BATCHMAN (State Bar No. 236311)
2 | HANSEN, KOHLS, JONES, SOMMER & JACOB, LLP
3001 LAVA RIDGE COURT, SUITE 120
3 | ROSEVILLE, CALIFORNIA  95661
TELEPHONE: (916) 781-2550
4 | FACSIMILE: (916) 781-5339

5 | Attorneys for Third-Party Defendants
LIVINGSTON & MATTESICH and KATHLEEN FINNERTY
6 |

7 |
                    UNITED STATES DISTRICT COURT
8 |
                    EASTERN DISTRICT OF CALIFORNIA
9 |

10 |

GREENBERG TRAURIG, LLP, a New          **Case No. 2:07-CV-01572  MCE DAD**
11 | York limited liability partnership,
                                         **THIRD PARTY DEFENDANTS**
12 |            Plaintiff,                **LIVINGSTON & MATTESICH LAW**
                                         **CORPORATION AND KATHLEEN**
13 | vs.                                 **FINNERTY'S STATEMENT**
                                         **DESIGNATING PORTIONS OF ROBERT**
14 | GALE CORP., a California corporation also **GALE DEPOSITION**
known as GALE CORPORATION,
15 |                                      **Complaint**
            Defendant,                   **Filed:        August 2, 2007**
16 | _____/
                                         **Trial Date:   November 2, 2009**
17 | AND RELATED COUNTER-CLAIM
AND THIRD PARTY CLAIM.
18 | _____/

19 |
        Pursuant to the Court's Final Pretrial Order dated October 22, 2009, third party
20 |
defendants Livingston & Mattesich and Kathleen Finnerty designate the following portions of
21 |
Robert Gale's deposition, Volume 1, taken May 14, 2008, which they intend to be offer or read
22 |
into the record, pgs. 73:20-75:25.  The following portions of Robert Gale's deposition are
23 |
attached hereto as Exhibit A.
24 |

25 |

26 |

27 |

28 |

1    DATED:  October 26, 2009                    Respectfully submitted,

2                                                HANSEN, KOHLS, JONES, SOMMER
                                                 & JACOB, LLP
3

4
                                        By:      /s/ Daniel V. Kohls
5                                                DANIEL V. KOHLS
                                                 BRET N. BATCHMAN
6                                                Attorneys for Third-Party Defendants
                                                 LIVINGSTON & MATTESICH and
7                                                KATHLEEN FINNERTY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

# EXHIBIT A

1    A.      No.  You know, forming a corporation and, you

2    know, a whole variety of --

3    Q.      Well, was it your first involvement with

4    litigation?

5            MR. NOLEN:  Do you know what litigation is?

6            MR. KOHLS:  A lawsuit.

7            MR. NOLEN:  Yeah.

8            THE WITNESS:  This is my first, you know,

9    significant.

10           MR. KOHLS:  Right.

11   Q.      Did you tell Miss Finnerty that?

12   A.      Tell her what?

13   Q.      That you had not been involved in litigation

14   before?

15   A.      Been involved in a patent infringement suit?

16   Q.      Any kind of lawsuit.  Car accident.  Breach of

17   contract.  Patent infringement.

18   A.      I don't think we ever had that discussion.  I

19   don't recall ever having that discussion.

20   Q.      Did you ask her what she meant by the word

21   rough in parentheses?

22   A.      What I understand is just what I've already

23   stated.  I would have estimate -- because the figures

24   are spread out, if I had a customer and I told them that

25   the least you could pay is $5,000 and the most is

1    30,000, they would look at me and say, How long have you

2    been doing this business, and I would say not very long,

3    because that's such a broad scope that I really don't

4    know what I'm doing.  And that's what I expected she

5    said rough is because she was giving herself a

6    substantial margin for error.  That's not a small

7    margin, 5,000 to 30,000.

8         If you want me to replace your flat screen for

9    $5,000, I'm going to tell you you could potentially

10   spend 30,000, I'm sure you would call Good Guys and ask

11   them to get their geek squad out there.

12   Q.        Right.  But you're not so naive as to believe

13   that the installation of a product is comparable to the

14   provision of legal services, are you?  I mean -- I don't

15   mean it that way.  You understand there's a difference

16   between the two?

17   A.        I understand that -- well, no, I honestly say

18   that I understand.  I can tell you what my life

19   experience is.

20   Q.        And what you would expect?

21   A.        Yeah.  And I find this frustrating, this spread

22   of numbers frustrating, but at least she gave me a cap.

23   At least I can swallow that pill and say that's as bad

24   as it's going to get.

25   Q.        When you say she gave you a cap, I just want to

1    make sure I absolutely understand what your testimony

2    is.   She said it shouldn't exceed that?

3    A.        That would be the impression I came away with.

4    Q.        Well, I want to know exactly what she said, as

5    best you can recall.

6    A.        Well, I'd have to reestablish what I told her,

7    and that was -- you can see by -- I think it was shortly

8    after this or even before this she saw the financial

9    statements of the company, and I explained to her very

10   clearly that we don't have the resources to go on some

11   lengthy legal process and this is what we have to

12   operate with, and so I need to know for certain.

13             And I just spoke to her like any of my clients

14   speak to me, give me your fair estimate of what you

15   think this is going to cost.  And as a professional in

16   my area of expertise, I give them my professional

17   opinion and they take that price to the bank.

18             And that's -- and I don't leave with the

19   illusion that if for some reason my employees go out

20   there and it cost -- they decide it's going to be a

21   five-day job rather than what I originally bid at one

22   day, that's my problem.  And that was my mind-set.  When

23   somebody tables a number in front of me, I'm assuming

24   because they call themselves professionals that they are

25   professional in their quoting.