1  Rudy Nolen, SBN 59808
   Stephen W. Owens, SBN 84859
2  NOLEN ■ OWENS
   1501 28TH Street
3  Sacramento, California 95816
   Telephone: (916) 733-0600
4
   Attorneys for GALE CORP.
5
6  Daniel V. Kohls, SBN 167987
   Bret N. Batchman, SBN 236311
7  HANSEN, KOHLS, JONES, SOMMER & JACOB, LLP
   3001 Lava Ridge Court, Suite 120
8  Roseville, California 95661
   Telephone: (916) 781-2550
9
   Attorneys for LIVINGSTON & MATTESICH and KATHLEEN FINNERTY
10
11                        UNITED STATES DISTRICT COURT
12                       EASTERN DISTRICT OF CALIFORNIA
13
14
   GREENBERG TRAURIG, LLP, a New          Case No.: 2:07-CV-01572-MCE-DAD
15 York limited liability partnership,
                                          **JOINT JURY INSTRUCTIONS**
16              Plaintiff,                **WITHOUT OBJECTION**
17 vs.
18 GALE CORP., A California corporation also
   known as GALE CORPORATION,
19
                Defendant.
20
21 AND RELATED COUNTERCLAIM AND
   THIRD PARTY CLAIMS
22
23
24       Pursuant to the Final Pretrial Order dated October 22, 2009, the parties hereby file their
25 Joint "Jury Instructions Without Objection" as **Exhibit A**.
26       The parties inform the Court that there remains a dispute as to whether one additional
27 instruction should be given:   Gale Corp. asserts that California Civil Jury Instruction 604
28 ("Referral to a Legal Specialist") should be given while Ms. Finnerty and Livingston & Mattesich

1   oppose that instruction on the grounds, among others, that patent law is not a recognized legal

2   specialty by the California State Bar Association.

3

DATED: October 26, 2009                    NOLEN & OWENS

4

5                                          By:  /s/ Rudy Nolen
                                               Rudy Nolen
6                                              Attorney for Gale Corp.

7

DATED: October 26, 2009                    HANSEN, KOHLS, JONES & SOMMER, LLP

8

9                                          By:  /s/ Daniel V. Kohls
                                               Daniel V. Kohls
10                                             Attorneys for Livingston & Mattesich and
                                               Kathleen Finnerty

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

—2—

# EXHIBIT A

1

2                          UNITED STATES DISTRICT COURT

3                          EASTERN DISTRICT OF CALIFORNIA

4

5

6

7    GREENBERG TRAURIG, LLP, a New
     York limited liability partnership,

8    Plaintiff,

9    vs.

10   GALE CORP., A California corporation also        Case No.: 2:07-CV-01572-MCE-DAD
     known as GALE CORPORATION,

11

12                Defendant.

13   AND RELATED COUNTERCLAIM AND
     THIRD PARTY CLAIMS

14

15

16              **JURY INSTRUCTIONS WITHOUT OBJECTION**

17

18          Now that you have heard all of the evidence and the arguments of the attorneys, it is my

19   duty to instruct you as to the law of the case.  Each of you has received a copy of these instructions

20   that you may take with you to the jury room to consult during your deliberations.

21          You must not infer from these instructions or from anything I may say or do as indicating

22   that I have an opinion regarding the evidence or what your verdict should be.  It is your duty to

23   find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to

24   you.  You must follow the law as I give it to you whether you agree with it or not.  And you must

25   not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means

26   that you must decide the case solely on the evidence before you.  You will recall that you took an

27   oath to do so.  In following my instructions, you must follow all of them and not single out some

28   and ignore others; they are all important.

                                          – 1 –

**Case Overview and
Jury Deliberation Matters**

Ninth Circuit 1.2         CLAIMS AND DEFENSES

The following is a brief summary of the positions of the parties:

As was explained to you at the outset, Gale Corp., a California corporation, claims that Kathleen Finnerty and her law firm, Livingston & Mattesich Law Corporation ("L&M"), committed malpractice and breached their fiduciary duties to Gale when they defended the company in a patent infringement lawsuit. That lawsuit, which we will call the "Kapusta Case," was based on the claim that Gale was infringing a patent owned by Joseph Kapusta. Gale and Joseph Kapusta settled that lawsuit before trial. Ms. Finnerty and L&M deny they did anything wrong when representing Gale and assert that they met the standard of care applicable to them.

Ninth Circuit 3.1     DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court. You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.

Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Ninth Circuit 3.2     COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a

1  note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of

2  the jury. No member of the jury should ever attempt to communicate with me except by a signed

3  writing; I will communicate with any member of the jury on anything concerning the case only in

4  writing, or here in open court. If you send out a question, I will consult with the parties before

5  answering it, which may take some time. You may continue your deliberations while waiting for

6  the answer to any question. Remember that you are not to tell anyone—including me—how the

7  jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have

8  been discharged. Do not disclose any vote count in any note to the court.

9

10  Ninth Circuit 3.3        RETURN OF VERDICT

11      A verdict form has been prepared for you. Answer each question in turn.  After you have

12  reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been

13  given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

14

15                **Burdens of Proof and Evidentiary Matters**

16

17  Ninth Circuit 1.3        BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

18      When a party has the burden of proof on any claim or affirmative defense by a

19  preponderance of the evidence, it means you must be persuaded by the evidence that the claim or

20  affirmative defense is more probably true than not true.  You should base your decision on all of

21  the evidence, regardless of which party presented it.

22

23  Ninth Circuit 1.4        BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

24      When a party has the burden of proving any claim or defense by clear and convincing

25  evidence, it means you must be persuaded by the evidence that the claim or defense is highly

26  probable. This is a higher standard of proof than proof by a preponderance of the evidence. You

27  should base your decision on all of the evidence, regardless of which party presented it.

28

Ninth Circuit 1.6    WHAT IS EVIDENCE?

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

Ninth Circuit 1.7    WHAT IS NOT EVIDENCE?

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Ninth Circuit 1.9    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should

– 4 –

1  consider both kinds of evidence. The law makes no distinction between the weight to be given to
2  either direct or circumstantial evidence. It is for you to decide how much weight to give to any
3  evidence.

4

5  Ninth Circuit 1.10    RULING ON OBJECTIONS

6      There are rules of evidence that control what can be received into evidence. When a lawyer
7  asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not
8  permitted by the rules of evidence, that lawyer may object.  If I overruled the objection, the
9  question was answered or the exhibit received.  If I sustained the objection, the question was not
10 answered, and the exhibit not received.  Whenever I sustained an objection to a question, you must
11 ignore the question and must not guess what the answer might have been.

12     Sometimes I may have ordered that evidence be stricken from the record and that you
13 disregard or ignore the evidence. That means that when you are deciding the case, you must not
14 consider the evidence that I told you to disregard.

15

16 Ninth Circuit 1.11    CREDIBILITY OF WITNESSES

17     In deciding the facts in this case, you may have to decide which testimony to believe and
18 which testimony not to believe. You may believe everything a witness says, or part of it, or none
19 of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about
20 it.

21     In considering the testimony of any witness, you may take into account:

22         (1) the opportunity and ability of the witness to see or hear or know the things
23 testified to;

24         (2) the witness's memory;

25         (3) the witness's manner while testifying;

26         (4) the witness's interest in the outcome of the case and any bias or prejudice;

27         (5) whether other evidence contradicted the witness's testimony;

28         (6) the reasonableness of the witness's testimony in light of all the evidence; and

1    (7) any other factors that bear on believability.

2    The weight of the evidence as to a fact does not necessarily depend on the number of

3    witnesses who testify about it.

4

5    Ninth Circuit 2.11    EXPERT OPINION

6    Some witnesses, because of education or experience, are permitted to state opinions and

7    the reasons for those opinions.  Opinion testimony should be judged just like any other testimony.

8    You may accept it or reject it, and give it as much weight as you think it deserves, considering the

9    witness's education and experience, the reasons given for the opinion, and all the other evidence in

10   the case.

11

12   Ninth Circuit 1.13    NO TRANSCRIPT AVAILABLE TO JURY

13   During deliberations, you will have to make your decision based on what you recall of

14   the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the

15   testimony as it is given. If at any time you cannot hear or see the testimony, evidence, questions or

16   arguments, let me know so that I can correct the problem.

17

18   Ninth Circuit 2.4    DEPOSITION IN LIEU OF LIVE TESTIMONY

19   A deposition is the sworn testimony of a witness taken before trial. The witness is placed

20   under oath to tell the truth and lawyers for each party may ask questions. The questions and

21   answers are recorded.

22   The deposition of [*to be filled in after trial* ] was taken on [*date*]. You should consider

23   deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the

24   same way as if the witness had been present to testify.

25

26   Ninth Circuit 2.10    USE OF INTERROGATORIES OF A PARTY

27   Evidence was presented to you in the form of answers of one of the parties to written

28   interrogatories submitted by the other side. These answers were given in writing and under oath,

1  before the actual trial, in response to questions that were submitted in writing under established

2  court procedures. You should consider the answers, insofar as possible, in the same way as if they

3  were made from the witness stand.

4

5  Ninth Circuit 2.12    CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

6  Certain charts and summaries not received in evidence have been shown to you in order to help

7  explain the contents of books, records, documents, or other evidence in the case. They are not

8  themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown

9  by the evidence in the case, you should disregard these charts and summaries and determine the

10  facts from the underlying evidence.

11

12  Ninth Circuit 2.13    CHARTS AND SUMMARIES IN EVIDENCE

13       Certain charts and summaries have been received into evidence to illustrate information

14  brought out in the trial. Charts and summaries are only as good as the underlying evidence that

15  supports them. You should, therefore, give them only such weight as you think the underlying

16  evidence deserves.

17

18  Ninth Circuit 4.2    LIABILITY OF CORPORATIONS

19       Under the law, a corporation is considered to be a person. It can only act through its

20  employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of

21  its employees, agents, directors, and officers performed within the scope of authority.

22

23                    **The Law of Professional Negligence and Fiduciary Duty**

24

25  CACI 400    ESSENTIAL FACTUAL ELEMENTS

26       Gale claims it was harmed by Ms. Finnerty and L&M's professional negligence.    To

27  establish this claim, Gale must prove all of the following:

28            1. That Ms. Finnerty or L&M was negligent;

1        2. That Gale was harmed; and

2        3. That Ms. Finnerty or L&M's professional negligence was a substantial factor in causing

3    Gale's harm.

4

5    CACI 430    CAUSATION: SUBSTANTIAL FACTOR

6        A substantial factor in causing harm is a factor that a reasonable person would consider to

7    have contributed to the harm. It must be more than a remote or trivial factor. It does not have to

8    be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm

9    would have occurred without that conduct.

10

11   CACI 600    STANDARD OF CARE

12       An attorney is negligent if she fails to use the skill and care that a reasonably careful

13   attorney would have used in similar circumstances. This level of skill, knowledge, and care is

14   sometimes referred to as "the standard of care." You must determine the level of skill and care

15   that a reasonably careful attorney would use in similar circumstances based only on the testimony

16   of the expert witnesses who have testified in this case.

17

18   CACI 4100    "FIDUCIARY DUTY" EXPLAINED

19       An attorney owes what is known as a fiduciary duty to her client. A fiduciary duty imposes

20   on an attorney a duty to act with the utmost good faith in the best interests of her client.

21

22   CACI 4106    BREACH OF FIDUCIARY DUTY BY ATTORNEY

23       Gale claims that it was harmed because Ms. Finnerty and L&M breached an attorney's duty

24   to provide competent legal advice. To establish this claim, Gale must prove all of the following:

25       1. That Ms. Finnerty and L&M breached the duty of an attorney to provide competent legal

26   advice.

27       2. That Gale was harmed; and

28       3. That Ms. Finnerty and L&M's conduct was a substantial factor in causing Gale's harm.

Jury Instructions Without Objection

CACI 602    SUCCESS NOT REQUIRED

An attorney is not necessarily negligent just because her efforts are unsuccessful or she makes an error that was reasonable under the circumstances. An attorney is negligent only if she was not as skillful, knowledgeable, or careful as other reasonable attorney would have been in similar circumstances.

CACI 603    ALTERNATIVE LEGAL DECISIONS OR STRATEGIES

An attorney is not necessarily negligent just because he or she chooses one legal strategy or makes a decision and it turns out that another strategy or decision would have been a better choice.

CACI 601    DAMAGES FOR NEGLIGENT HANDLING OF LEGAL MATTER

To recover damages from Ms. Finnerty or L&M, Gale must prove that it would have obtained a better result if Ms. Finnerty or L&M had acted as a reasonably careful attorney.

Ninth Circuit 5.1    DAMAGES—PROOF

By instructing you on damages, I do not mean to suggest for which party your verdict should be rendered.

If you find for Gale, you must determine its damages.  Gale has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Gale for any injury you find was caused by Ms. Finnerty or L&M. You should consider the following: (Ninth Circuit 5.2)

- The reasonable value of the lost profits, if any, that Gale would have made but for the negligence,
- The unnecessary attorneys' fees that Gale paid to L&M in the underlying Kapusta case, if any,
- The reasonable value of the attorneys' fees that Gale paid in the underlying Kapusta case to remedy the negligence, if any,

1    • The cost of the license that Gale entered into with Kapusta to settle the

2    underlying case, if this cost was caused by defendants' negligence.

3

4    CACI 3903N        LOST PROFITS

5    To recover damages for lost profits, Gale must prove it is reasonably certain it would have

6    earned profits but for Ms. Finnerty or L&M's conduct.    To decide the amount of damages for lost

7    profits, you must determine the gross amount Gale would have received but for Ms. Finnerty or

8    L&M's conduct and then subtract from that amount the expenses [including the value of the cost

9    of goods sold] that Gale would have had if Ms. Finnerty or L&M's conduct had not occurred.

10    The amount of the lost profits need not be calculated with mathematical precision, but

11    there must be a reasonable basis for computing the loss.

12

13    Ninth Circuit 5.3        DAMAGES—MITIGATION

14    Gale had a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid

15    or reduce damages.

16    Ms. Finnerty and L&M have the burden of proving by a preponderance of the evidence:

17    1. that Gale failed to use reasonable efforts to mitigate damages; and

18    2. the amount by which damages would have been mitigated.

19

20    **Affirmative Defenses**

21    CACI 610        Statute of Limitations Defense

22    L&M contends that Gale's lawsuit was not filed within the time set by law.    To succeed on

23    this defense, it must prove that before September 4, 2006 Gale knew, or with reasonable diligence

24    should have discovered, the facts of its alleged wrongful act or omission.

25

26    CACI 405        Plaintiff's Contributory Negligence

27    Ms. Finnerty and L&M claim that Gale's harm was caused in whole or in part by it's own

28    negligence. To succeed on this claim, Ms. Finnerty and L&M must prove both of the following:

1    1. That Gale was negligent; and

2    2. That Gale's negligence was a substantial factor in causing its harm.

3    If Ms. Finnerty and L&M proves the above, Gale's damages are reduced by your

4    determination of the percentage of Gale's responsibility. I will calculate the actual reduction.

5

6    **Patent Law**

7    This case concerned Ms. Finnerty and L&M's alleged negligence in handling a patent

8    infringement lawsuit. The following patent law will assist you in determining whether Gale would

9    have achieved a better result in the underlying Kapusta lawsuit but for the alleged negligence. You

10    have already seen a video that discussed some patent law fundamentals. Consider that information

11    as well as the following.

12    N.D. Cal. A1        WHAT A PATENT IS AND HOW ONE IS OBTAINED

13    This case involves a dispute relating to a United States patent. Before summarizing the

14    positions of the parties and the legal issues involved in the dispute, let me take a moment to

15    explain what a patent is and how one is obtained.

16    Patents are granted by the United States Patent and Trademark Office (sometimes called

17    "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States

18    patent gives the patent owner the right [for up to 20 years from the date the patent application was

19    filed] [for 17 years from the date the patent issued] to prevent others from making, using, offering

20    to sell, or selling the patented invention within the United States or from importing it into the

21    United States without the patent holder's permission. A violation of the patent owner's rights is

22    called infringement. The patent owner may try to enforce a patent against persons believed to be

23    infringers by a lawsuit filed in federal court.

24    To obtain a patent one must file an application with the PTO. The PTO is an agency of the

25    federal government and employs trained examiners who review applications for patents. The

26    application includes what is called a "specification," which must contain a written description of

27    the claimed invention telling what the invention is, how it works, how to make it and how to use it

28    so others skilled in the field will know how to make or use it. The specification concludes with

one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because

1  it does not meet the requirements for a patent.

2  N.D. Cal. A2        PATENT AT ISSUE

3  Joseph Kapusta claimed in the underlying case that Gale infringed U.S. Patent 6,043,663

4  (the "Kapusta Patent").

5  N.D. Cal. A3        SUMMARY OF CONTENTIONS IN THE KAPUSTA CASE

6  The parties in the underlying Kapusta case were Kapusta and Gale.  The case involved a

7  United States patent obtained by Kapusta.  The patent was United States Patent Number 6,043,663

8  (the "Kapusta Patent").

9  Kapusta filed suit seeking money damages from Gale for allegedly infringing the Kapusta

10  patent by making and selling products that Kapusta argued were covered by the claims of the

11  patent.  Gale denied that it infringed the patent and argued that, in addition, the claims were invalid

12  and were also unenforceable due to inequitable conduct and patent misuse.

13  Your job will be to decide whether the patent was infringed.  If there is any claim language

14  that needs interpretation it is my job as judge to determine the meaning of that language.  You

15  must accept the meanings I give you and use them when you decide whether any claim of the

16  patent was infringed.  In this action, all the parties agree that the Kapusta claims are invalid.

17

18  N.D. Cal. B3.1        INFRINGEMENT – BURDEN OF PROOF

19  To have proven infringement of any claim of the Kapusta patent, Kapusta was obligated to

20  persuade the jury that it was more likely than not that Gale infringed a claim.

21

22  N.D. Cal. B3.2        DIRECT INFRINGEMENT

23  A patent's claims define what is covered by the patent.  A product directly infringes a

24  patent if it is covered by at least one claim of the patent.

25  Deciding whether a claim has been directly infringed is a two-step process.  The first step

26  is to decide the meaning of the patent claims.  The court in the underlying Kapusta case has

27  already made this decision.  The patent claim language has the ordinary meanings that are

28  attributed to each word and/or phrase.  The second step is to decide whether Gale made and/or

– 13 –

sold within the United States a product covered by a claim of the Kapusta patent. You, the jury, make this decision.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.


N.D. Cal. B3.3        LITERAL INFRINGEMENT

To decide whether Gale's product literally infringes a claim of the Kapusta Patent, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product. If so, Gale's product literally infringes that claim. If, however, Gale's product does not have every requirement in the patent claim, it does not literally infringe the claim.


N.D. Cal. B3.4        INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If you decide that Gale's product does not literally infringe an asserted patent claim, you must then decide whether that product infringes the claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one requirement of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents.

Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has either an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged

infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement is not substantial. The fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

You may not use the doctrine of equivalents to find infringement if you find that Gale's product is the same as what was in the prior art before the application for the Kapusta Patent or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

N.D. Cal. B4.1          INVALIDITY – BURDEN OF PROOF

To prove invalidity of any of Kapusta's patent claims, Gale would have had to persuade the jury that it is highly probable that those claims were invalid.

N.D. Cal. B.4.3          ANTICIPATION

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods,

1   publications or patents are called "prior art references." If a patent claim is not new we say it is

2   "anticipated" by a prior art reference.

3       The description in the written reference does not have to be in the same words as the claim,

4   but all of the requirements of the claim must be there, either stated or necessarily implied, so that

5   someone of ordinary skill in the relevant field looking at that one reference would be able to make

6
    and use the claimed invention.
7

8       Here is a list of ways that someone can show that a patent claim was not new:

9       -if the claimed invention was already known or publicly used by others in the United
10      States before the patent application date;

11      -if the claimed invention was already patented or described in a printed publication
        anywhere in the world before the patent application date;

12
        -if the claimed invention was already made by someone else in the United States before
13      the patent application date, if that other person had not abandoned the invention or kept it
        secret;

14      -if the claimed invention was already described in another issued U.S. patent or published
15      U.S. patent application that was based on a patent application filed before the patent's
        application date.

16

17  N.D. Cal. B.4.3        STATUTORY BARS

18      A patent claim is invalid if the patent application was not filed within the time required by

19  law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its

20  requirements must have been present in one prior art reference dated more than one year before

21  the patent application was filed. Here is a list of ways Gale Corp could have shown in the

22  underlying case that the patent application was not timely filed:

23
        -if Kapusta's invention was already patented or described in a printed publication
24      anywhere in the world one year before the filing date of the '663 application;

25      -if Kapusta's invention was already being openly used in the United States one year
        before the '663 application filing date and that use was not primarily an experimental use
26      (a) controlled by the inventor, and (b) to test whether the invention worked for its
        intended purpose.

27
        -if a device or method using the claimed invention was sold or offered for sale in the
28      United States, and that claimed invention was ready for patenting one year before the
        application filing date. The claimed invention is not being sold or offered for sale if

Kapusta shows that the sale or offer for sale was primarily experimental. The claimed invention is ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person or ordinary skill in the field to make and use the invention based on them.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skill in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the relevant field looking at the reference to make and use the claimed invention.

N. D. Cal. B.4.3    OBVIOUSNESS

Not all innovations are patentable. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed. The court, however, is charged with the responsibility of making the determination as to whether a patent claim was obvious based upon your determination of several factual questions. First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. Second, you must decide the scope and content of the prior art. Third, you must decide what difference, if any, existed between the claimed invention and the prior art. Finally, you must determine which, if any, of the following factors have been established by the evidence:

(1)    commercial success of a product due to the merits of the claimed invention;

(2)    a long felt need for the solution provided by the claimed invention;

(3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)    copying of the claimed invention by others;

Jury Instructions Without Objection

(5)     unexpected and superior results from the claimed invention;

(6)     acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7)     other evidence tending to show nonobviousness;

(8)     independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

(9)     other evidence tending to show obviousness.


N.D. Cal. B4.3bi     SCOPE AND CONTENT OF PRIOR ART

Gale and Ms. Finnerty and L&M disagree as to whether other prior art references should have been included in the prior art available to decide the validity of the claims of the Kapusta Patent. In order to be considered as prior art, a reference must be reasonably related to the claimed invention of the patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.


N.D. Cal. B4.3biii     LEVEL OF ORDINARY SKILL

During this case you have been exposed to the phrase "a person of ordinary skill in the field of electronic devices." It is up to you to decide the level of ordinary skill in that field. You should consider all the evidence introduced at trial in making this decision, including:

(1)     the levels of education and experience of persons working in the field,

(2)     the types of problems encountered in the field; and,

(3)     the sophistication of the technology.


N.D. Cal. C1     GLOSSARY OF PATENT TERMS

*Abstract*: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

1    *Amendment*:  A patent applicant's change to one or more claims or to the specification
2    either in response to an office action taken by a Patent Examiner or independently by the patent
3    applicant during the patent application examination process.

4    *Anticipation*:  A situation in which a claimed invention describes an earlier invention and,
5    therefore, is not considered new and is not entitled to be patented.

6    *Claim*: Each claim of a patent is a concise, formal definition of an invention and appears at
7    the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks
8    the boundaries of the patent in the same way that a legal description in a deed specifies the
9    boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the
10   bounded property, the inventor can prevent others from using what is claimed.  Claims may be
11   independent or dependent. An independent claim stands alone.  A dependent claim does not stand
12   alone and refers to one or more other claims.  A dependent claim incorporates whatever the other
13   referenced claim or claims say.

14   *Continuation Application*:  A patent application filed during the examination process of an
15   earlier application which has the same disclosure as the original application and does not include
16   anything which would constitute new matter if inserted in the original application.

17   *Drawings*: The drawings are visual representations of the claimed invention contained in a
18   patent application and issued patent, and usually include several figures illustrating various aspects
19   of the claimed invention.

20   *Elements*:  The required parts of a device or the required steps of a method.  A device or
21   method infringes a patent if it contains each and every requirement of a patent claim.

22   *Embodiment*:  A product or method that contains the claimed invention.

23   *Examination*:  Procedure before the U.S. Patent and Trademark Office whereby a Patent
24   Examiner reviews the filed patent application to determine if the claimed invention is patentable.

25   *Filing Date*:  Date a patent application, with all the required sections, has been submitted
26   to the U.S. Patent and Trademark Office.

27   *Infringement*:   Violation of a patent occurring when someone makes, uses or sells a
28   patented invention, without permission of the patent holder, within the United States during the

term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using or selling the patented invention without permission. Inducing infringement is intentionally causing another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for non-infringing uses.

*Limitation*: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

*Nonobviousness:* One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

*Office Action*: A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

*Patent*: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using or selling an invention for a term of 20 years from the date the patent application was filed (or 17 years from the date the patent issued). When the patent expires, the right to make, use or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

*Patent and Trademark Office (PTO)*: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

*Prior Art:* Previously known subject matter in the field of a claimed invention for which a

1  patent is being sought. It includes issued patents, publications, and knowledge deemed to be
2  publicly available such as trade skills, trade practices and the like.

3      *Prosecution History*: The prosecution history is the complete written record of the
4  proceedings in the PTO from the initial application to the issued patent. The prosecution history
5  includes the office actions taken by the PTO and the amendments to the patent application filed by
6  the applicant during the examination process.

7      *Reads On*: A patent claim "reads on" a device or method when each required part
8  (requirement) of the claim is found in the device or method.

9      *Requirement*: A required part or step of an invention set forth in a patent claim. The word
10  "requirement" is often used interchangeably with the word "limitation."

11      *Royalty*: A royalty is a payment made to the owner of a patent by a non-owner in
12  exchange for rights to make, use or sell the claimed invention.

13      *Specification*: The specification is a required part of a patent application and an issued
14  patent. It is a written description of the invention and of the manner and process of making and
15  using the claimed invention.

16
17
18
19
20
21
22
23
24
25
26
27
28

Jury Instructions Without Objection